USDC SCAN INDEX SHEET

JPP 12/15/03 15:20

3:03-CV-02486 OAKLEY INC V. WEILACHER

*1*

*CMP.*

Gregory L. Weeks, Esq.
California State Bar No. 58584
Janet Robertson Kaufman, Esq.
California State Bar No. 116143
Gregory K. Nelson, Esq.
California State Bar No. 203029
WEEKS, KAUFMAN, NELSON & JOHNSON
462 Stevens Avenue, Suite 310
Solana Beach, CA 92075
(858) 794-2140

Attorneys for Plaintiff

FILED
DEC 11 2003
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **OAKLEY, INC.**, a Washington corporation,<br><br>Plaintiff,<br><br>vs.<br><br>**DANIEL WEILACHER**, an individual, **THEBESTREPLICAS.COM**, an unknown entity, and **UNITED RESEARCH**, a Utah corporation,<br><br>Defendants. | Case No.:<br>'03 CV 2486 B (AJB)<br>COMPLAINT FOR PATENT INFRINGEMENT, TRADE DRESS INFRINGEMENT, TRADEMARK INFRINGEMENT, AND BREACH OF CONTRACT<br><br>JURY TRIAL |

Plaintiff Oakley, Inc. (hereinafter referred to as "Oakley") hereby complains of Defendants Daniel Weilacher (hereinafter referred to as "Weilacher"), TheBestReplicas.com (hereinafter referred to as "Best Replicas") and United Research (hereinafter referred to as "United Research"), collectively referred to as "Defendants," and alleges as follows:

**JURISDICTION AND VENUE**

1. Jurisdiction over this action is founded upon 15 U.S.C. §§ 1121, and 28 U.S.C. §§ 1331 and 1338. Venue is proper under 28 U.S.C. §§ 1391(b) and (c), this claim having arisen and Defendant doing business in this district. Defendants sold

infringing products in this district and directed sales and marketing efforts toward this district.

2. Further, Weilacher, on behalf of himself and United Research, entered into a Settlement Agreement and Final Consent Judgment with Oakley, arising from a prior lawsuit, entitled Oakley, Inc. v. ReplicaWarehouse.com, United Research, Daniel Weilacher, and Brice Williams (Case No. 01 CV 1486 K (JAH)) (hereinafter referred to as "Previous Lawsuit"). In the Previous Lawsuit, Oakley alleged that Weilacher, and his other corporate entities, was selling sunglasses that infringed patents and trademarks, which are again asserted in this lawsuit. In resolution of the Previous Lawsuit, Weilacher agreed that in the event he violated of the Final Consent Judgment or breached of the Settlement Agreement, any litigation arising from such violation or breach would be subject to the exclusive jurisdiction of a court of competent jurisdiction in San Diego County, California. A true and correct copy of the Final Consent Judgment and Settlement Agreement are attached hereto and incorporated by reference as Exhibits 22 and 23, respectively.

## THE PARTIES

3. Plaintiff Oakley is a corporation organized and existing under the laws of the State of Washington, having its principal place of business at One Icon, Foothill Ranch, California 92610 and doing business within this judicial district.

4. Oakley is informed and believes, and thereupon alleges, that Defendant Daniel Weilacher is a resident of Utah. Oakley is informed and believes, and thereupon alleges, that Defendant Weilacher resides at 10741 Martingale Drive, South Jordan, Utah 84095. Oakley is further informed and believes, and thereupon alleges, that Weilacher is the owner and/or officer of United Research. Additionally, Oakley is informed and believes, and thereupon alleges, that Weilacher is the owner of TheBestReplicas.com. If necessary, Oakley will amend this complaint upon gaining further information regarding the form and entity of the TheBestReplicas.com and United Research.

5. Oakley is informed and believes, and thereupon alleges that Defendant TheBestReplicas.com is an unknown business entity located in Utah, with its principal place of business located at 126 East 4800 South, Murray, Utah and/or 4994 South 300 West, Murray, Utah, and also doing business within this judicial district via the Internet. Oakley is informed and believes, and based thereon, alleges, that TheBestReplicas.com does business with United Research, and is owned by Daniel Weilacher. If necessary, Oakley will amend this complaint upon gaining further information regarding the form and entity of the TheBestReplicas.com.

6. Oakley is informed and believes, and thereupon alleges, that Defendant United Research is a Utah business entity with its corporate offices located at 10741 Martingale Drive, South Jordan, Utah 84095, and with its principal place of business located at 126 East 4800 South, Murray, Utah and/or 4994 South 300 West, Murray, Utah. Oakley is informed and believes, and thereupon alleges, that United Research is in business with TheBestReplicas.com. In particular, Oakley is informed and believes, and thereupon alleges, that United Research receives orders on behalf of TheBestReplicas.com and subsequently fills those orders, ships those orders, and fields customer services questions and complaints on behalf of TheBestReplicas.com. Oakley is informed and believes, and thereupon alleges, that the chief officer for United Research is Daniel Weilacher. If necessary, Oakley will amend this complaint upon gaining further information regarding the form and entity of the TheBestReplicas.com.

7. Oakley is informed and believes, and thereupon alleges, that Defendants Weilacher is the alter ego of TheBestReplicas.com and United Research. Accordingly, Weilacher is personally liable for direct infringement and inducing infringement, under the theory of alter ego, as set forth more specifically below.

8. Oakley is informed and believes, and thereupon alleges, that Weilacher established TheBestReplicas.com to hide his real identity while transacting unlawful activities over the Internet. Oakley is informed and believes, and thereupon alleges, that

TheBestReplicas.com and United Research are in business together wholly as a sham to hide the unlawful activities of Weilacher. Oakley is informed and believes, and thereupon alleges, that Weilacher has disregarded any corporate form and have dominated and controlled TheBestReplicas.com and United Research to such an extent that the individuality and separateness of TheBestReplicas.com and United Research ceased.

9. Oakley is further informed and believes, and thereupon alleges, that injustice would occur if the corporate veil is not pierced because Defendant Weilacher never capitalized TheBestReplicas.com or United Research to satisfy major corporate liabilities, such as damages from patent infringement. They should have expected that where the business of TheBestReplicas.com and United Research is predicated upon the unlawful violation of Oakley's intellectual property rights, TheBestReplicas.com and United research may be forced to someday account for their unlawful activity, especially as Weilacher and United Research were previously sued by Oakley. Allowing a sham to hide Weilacher from liability would result in inequity.

10. Oakley is informed and believes, and thereupon alleges, that since formation, TheBestReplicas.com and United Research have been used for no lawful purpose. Instead, Oakley is informed and believes, and thereupon alleges, that these companies have been used, dominated, and controlled by Weilacher to perpetuate frauds against consumers and to unlawfully trade on Oakley's intellectual property rights. Being thus undercapitalized and blatantly trading on Oakley's goodwill, reputation, image, and technology, Weilacher has fraudulently used TheBestReplicas.com and United Research.

11. Oakley is still gathering information regarding all three Defendants and their relationship with one another in their business ventures. Oakley will amend this complaint further, if necessary, to clarify these relationships and its claim of alter ego liability against Weilacher.

## FACTUAL BACKGROUND

12. As early as 1985, Oakley has been and continues to be actively engaged in the manufacture and sale of high quality sport sunglasses under various product lines. Oakley is the manufacturer and retailer of several lines of sunglasses, including its "A Wire"®, "Eye Jacket"®, "Eye Jacket® 2.0", "Eye Jacket® 3.0", "E Wire"®, "Fives"®, "Fives® 2.0", "Fours"®, "Half Jacket"™, "Juliet"®, "M Frame"®, "Minute"®, "Penny"®, "Romeo"®, "Scar"®, "Straight Jacket"®, "Splice"®, "Square Wire® 2.0", and "Wire Tap"™ sunglass lines. As part of its routine sales practice, Oakley includes a black sunglass bag bearing the stylized trademark "Oakley", as well as imprinting its stylized trademarks "Oakley" and ellipsoid "O" on the sunglasses themselves.

13. Oakley is the owner of U.S. Registered Trademark No. 1,980,039, duly registered on June 11, 1996, claiming the stretched trademark "Oakley" for use on goods in Class 9. A true and correct copy of this trademark registration is attached hereto and incorporated by reference as Exhibit 1.

14. Oakley is the owner of U.S. Registered Trademark No. 1,984,501 duly registered on July 2, 1996, claiming the Oakley ellipsoid "o" for goods in Class 9. A true and correct copy of this trademark registration is attached hereto and incorporated herein by reference as Exhibit 2.

15. Oakley is the owner of U.S. Registered Trademark No. 2,146,295 duly registered on March 24, 1998, claiming the relative position of the ellipsoid "o" on goods in Class 9. A true and correct copy of this trademark registration is attached hereto and incorporated herein by reference as Exhibit 3.

16. The trademark registrations referred to above are in full force and effect. The trademarks and the good will of the business of Plaintiff Oakley in connection with which the trademarks have been used have never been abandoned. Oakley continues to preserve and maintain its rights with respect to said trademark registrations.

… … …

17. The trademarks above are inherently distinctive in appearance and have become, through widespread public acceptance, a distinctive designation of the source of origin of goods offered by Oakley and has acquired secondary meaning in the marketplace and constitute an asset of incalculable value as a symbol of Oakley and its quality goods and good will.

18. Oakley is informed and believes, and thereupon alleges, that the Defendants, and each of them, are selling counterfeit Oakley sunglasses that use one or more of the trademarks set forth above. The counterfeit Oakley sunglasses sold by Defendants, and each of them, include the stretched "Oakley" mark on the nose bridges, Oakley's ellipsoid "O", and place the ellipsoid "O" on the earstem. This unauthorized and unlawful use of Oakley's trademarks was done without Oakley's consent or permission and without any license from Oakley. Oakley is further informed and believes, and thereupon alleges, that Defendants, and each of them, supplied these Oakley copy sunglasses to various distributors, retailers, and consumers.

19. In the Previous Lawsuit, Oakley alleged that Weilacher and his corporate entities were selling sunglasses that unlawfully used Oakley's Registered Trademark Nos. 1,980,039, 1984,501, and 2,146,295. By way of a Final Consent Judgment, attached hereto as Exhibit 22, Weilacher agreed not to contest the validity and enforceability of these trademarks, and further agreed to be permanently enjoined and restrained from making, importing, using, or selling any sunglass that infringes one or more of these trademarks. Further, by way of a Settlement Agreement at the same time, attached hereto as Exhibit 23, Weilacher agreed to similar terms, as well as to pay Oakley compensation. Weilacher failed to abide by the voluntary injunction and breached the Agreement by continuing to sell sunglasses that infringe Oakley's trademarks set out above.

20. Plaintiff Oakley is the owner by assignment of U.S. Patent No. 5,137,342 duly and lawfully issued on August 11, 1992 describing and claiming the invention

entitled "EYEWEAR TRACTION DEVICE", protecting the technology for an improved elastomeric traction device. A correct copy of U.S. Patent No. 5,137,342 is attached hereto as Exhibit 4.

21. In the Previous Lawsuit, Oakley alleged that Weilacher, through his corporate entities including United Research, was selling sunglasses that incorporated the technology claimed in U.S. Patent No. 5,137,342. In the Previous Lawsuit, Oakley alleged that Weilacher and his corporate entities were selling sunglasses that infringed U.S. Patent No. 5,137,342. By way of a Final Consent Judgment, attached hereto as Exhibit 22, Weilacher agreed not to contest the validity and enforceability of this patent, and further agreed to be permanently enjoined and restrained from making, importing, using, or selling any sunglass that infringed this patent. Further, by way of a Settlement Agreement at the same time, attached hereto as Exhibit 23, Weilacher agreed to similar terms, as well as to pay Oakley compensation. Weilacher failed to abide by the voluntary injunction and breached the Agreement by continuing to sell sunglasses that infringe Oakley's '342 patent.

22. Oakley is informed and believes, and thereupon alleges that the Defendants, and each of them, are selling sunglasses that copy U.S. Patent No. 5,137,342 of Oakley. The copy Oakley sunglasses sold by Defendants, and each of them, embody the subject matter claimed in Oakley's U.S. Patent No. 5,137,342 without any license thereunder and is thereby infringing said patent. Oakley is informed and believes and based thereon alleges that Defendants, and each of them, supplied said imitation Oakley sunglasses to various distributors, retailers, and retail customers.

23. Oakley is the owner by assignment of U.S. Patent No. D420,036 duly and lawfully issued on February 1, 2000, describing and claiming the invention entitled "EYEGLASS COMPONENTS" protecting the sunglass design marketed by Oakley under the name "A Wire®". A true copy of U.S. Patent No. D420,036 is attached hereto as Exhibit 5.

24. Oakley is informed and believes, and thereupon alleges that the Defendants, and each of them, are selling sunglasses that copy U.S. Patent No. D420,036 of Oakley. The copy Oakley sunglasses sold by Defendants, and each of them, embody the subject matter claimed in Oakley's U.S. Patent No. D420,036 without any license thereunder and is thereby infringing said patent. Oakley is informed and believes and based thereon alleges that Defendants, and each of them, supplied said imitation Oakley sunglasses to various distributors, retailers, and retail customers.

25. Oakley is the owner by assignment of U.S. Patent No. D369,375 duly and lawfully issued on April 30, 1996, describing and claiming the invention entitled "EYEGLASSES" protecting the sunglass design marketed by Oakley under the name "Eye Jacket"®. A correct copy of U.S. Patent No. D369,375 is attached hereto as Exhibit 6.

26. Oakley is the owner by assignment of U.S. Patent No. D408,048 duly and lawfully issued on April 13, 1999 describing and claiming the invention entitled "EYEWEAR" protecting the sunglass design marketed by Oakley under the name "Eye Jacket"®. A correct copy of U.S. Patent No. D408,048 is attached hereto as Exhibit 7.

27. Oakley is informed and believes, and thereupon alleges that the Defendants, and each of them, are selling sunglasses that copy the above design patents of Oakley. The "Eye Jacket"® copy sunglasses sold by Defendants embody the subject matter claimed in Oakley's design patents referred to above without any license thereunder and is thereby infringing said patents. Oakley is informed and believes and based thereon alleges that Defendants, and each of them, supplied said imitation Oakley sunglasses to various distributors, retailers, and retail customers.

28. In the Previous Lawsuit, Oakley alleged that Weilacher, through his corporate entities including United Research, was selling sunglasses that incorporated the technology claimed in U.S. Patent Nos. D369,375 and D408,048. In the Previous Lawsuit, Oakley alleged that Weilacher and his corporate entities were selling

sunglasses that infringed U.S. Patent No. D369,375 and D408,048. By way of a Final Consent Judgment, attached hereto as Exhibit 22, Weilacher agreed not to contest the validity and enforceability of this patent, and further agreed to be permanently enjoined and restrained from making, importing, using, or selling any sunglass that infringed this patent. Further, by way of a Settlement Agreement at the same time, attached hereto as Exhibit 23, Weilacher agreed to similar terms, as well as to pay Oakley compensation. Weilacher failed to abide by the voluntary injunction and breached the Agreement by continuing to sell sunglasses that infringe Oakley's '375 and '048 patents.

29. Oakley is the owner by assignment of U.S. Patent No. D445,443S duly and lawfully issued on July 24, 2001, describing and claiming the invention entitled "EYEGLASS FRONT" protecting the sunglass design marketed by Oakley under the name "Eye Jacket® 2.0". A true copy of U.S. Patent No. D445,443S is attached hereto as Exhibit 8.

30. Oakley is informed and believes, and thereupon alleges that the Defendants, and each of them, are selling sunglasses that copy U.S. Patent No. D445,443S of Oakley. The copy Oakley sunglasses sold by Defendants, and each of them, embody the subject matter claimed in Oakley's U.S. Patent No. D445,443S without any license thereunder and is thereby infringing said patent. Oakley is informed and believes and based thereon alleges that Defendants, and each of them, supplied said imitation Oakley sunglasses to various distributors, retailers, and retail customers.

31. Oakley is the owner by assignment of U.S. Patent No. D376,381 duly and lawfully issued on December 10, 1996, describing and claiming the invention entitled "PAIR OF SPECTACLES WITHOUT EARSTEMS" protecting the sunglass design marketed by Oakley under the name "e Wire®". A true copy of U.S. Patent No. D376,381 is attached hereto as Exhibit 9.

32. Oakley is informed and believes, and thereupon alleges that the Defendants, and each of them, are selling sunglasses that copy U.S. Patent No. D376,381 of Oakley.

The copy Oakley sunglasses sold by Defendants, and each of them, embody the subject matter claimed in Oakley's U.S. Patent No. D376,381 without any license thereunder and is thereby infringing said patent. Oakley is informed and believes and based thereon alleges that Defendants, and each of them, supplied said imitation Oakley sunglasses to various distributors, retailers, and retail customers.

33. Oakley is the owner by assignment of U.S. Patent No. D423,548 duly and lawfully issued on April 25, 2000, describing and claiming the invention entitled "EYEGLASSES" protecting the sunglass design marketed by Oakley under the name "Fives"®. A true copy of U.S. Patent No. D423,548 is attached hereto as Exhibit 10.

34. Oakley is informed and believes, and thereupon alleges that the Defendants, and each of them, are selling sunglasses that copy U.S. Patent No. D423,548 of Oakley. The copy Oakley sunglasses sold by Defendants, and each of them, embody the subject matter claimed in Oakley's U.S. Patent No. D423,548 without any license thereunder and is thereby infringing said patent. Oakley is informed and believes and based thereon alleges that Defendants, and each of them, supplied said imitation Oakley sunglasses to various distributors, retailers, and retail customers.

35. Oakley is the owner by assignment of U.S. Patent No. D461,834S duly and lawfully issued on August 20, 2002, describing and claiming the invention entitled "EYEGLASS AND EYEGLASS COMPONENTS" protecting the sunglass design marketed by Oakley under the name "Fours"®. A true copy of U.S. Patent No. D461,834S is attached hereto as Exhibit 11.

36. Oakley is informed and believes, and thereupon alleges that the Defendants, and each of them, are selling sunglasses that copy U.S. Patent No. D461,834S of Oakley. The copy Oakley sunglasses sold by Defendants, and each of them, embody the subject matter claimed in Oakley's U.S. Patent No. D461,834S without any license

… … …

… … …

thereunder and is thereby infringing said patent. Oakley is informed and believes and based thereon alleges that Defendants, and each of them, supplied said imitation Oakley sunglasses to various distributors, retailers, and retail customers.

37. Oakley is the owner by assignment of U.S. Patent No. D399,866 duly and lawfully issued on October 20, 1998, describing and claiming the invention entitled "EYEGLASS COMPONENT" protecting the sunglass design marketed by Oakley under the name "M Frame"®. A true copy of U.S. Patent No. D399,866 is attached hereto as Exhibit 12.

38. Oakley is informed and believes, and thereupon alleges that the Defendants, and each of them, are selling sunglasses that copy U.S. Patent No. D399,866 of Oakley. The copy Oakley sunglasses sold by Defendants, and each of them, embody the subject matter claimed in Oakley's U.S. Patent No. D399,866 without any license thereunder and is thereby infringing said patent. Oakley is informed and believes and based thereon alleges that Defendants, and each of them, supplied said imitation Oakley sunglasses to various distributors, retailers, and retail customers.

39. Oakley is the owner by assignment of U.S. Patent No. D422,298 duly and lawfully issued on April 4, 2000, describing and claiming the invention entitled "EYEGLASS COMPONENTS" protecting the sunglass design marketed by Oakley under the name "Juliet"®. A true copy of U.S. Patent No. D422,298 is attached hereto as Exhibit 13.

40. Oakley is informed and believes, and thereupon alleges that the Defendants, and each of them, are selling sunglasses that copy U.S. Patent No. D422,298 of Oakley. The copy Oakley sunglasses sold by Defendants, and each of them, embody the subject matter claimed in Oakley's U.S. Patent No. D422,298 without any license thereunder and is thereby infringing said patent. Oakley is informed and believes and based thereon alleges that Defendants, and each of them, supplied said imitation Oakley sunglasses to various distributors, retailers, and retail customers.

41. Oakley is the owner by assignment of U.S. Patent No. D415,188 duly and lawfully issued on October 12, 1999, describing and claiming the invention entitled "EYEGLASSES" protecting the sunglass design marketed by Oakley under the name "Minute"®. A true copy of U.S. Patent No. D415,188 is attached hereto as Exhibit 14.

42. Oakley is informed and believes, and thereupon alleges that the Defendants, and each of them, are selling sunglasses that copy U.S. Patent No. D415,188 of Oakley. The copy Oakley sunglasses sold by Defendants, and each of them, embody the subject matter claimed in Oakley's U.S. Patent No. D415,188 without any license thereunder and is thereby infringing said patent. Oakley is informed and believes and based thereon alleges that Defendants, and each of them, supplied said imitation Oakley sunglasses to various distributors, retailers, and retail customers.

43. Oakley is the owner by assignment of U.S. Patent No. D470,166S duly and lawfully issued on February 11, 2003, describing and claiming the invention entitled "EYEGLASS COMPONENTS" protecting the sunglass design marketed by Oakley under the name "Penny"®. A true copy of U.S. Patent No. D470,166S is attached hereto as Exhibit 15.

44. Oakley is informed and believes, and thereupon alleges that the Defendants, and each of them, are selling sunglasses that copy U.S. Patent No. D470,166S of Oakley. The copy Oakley sunglasses sold by Defendants, and each of them, embody the subject matter claimed in Oakley's U.S. Patent No. D470,166S without any license thereunder and is thereby infringing said patent. Oakley is informed and believes and based thereon alleges that Defendants, and each of them, supplied said imitation Oakley sunglasses to various distributors, retailers, and retail customers.

45. Oakley is the owner by assignment of U.S. Patent No. D398,326 duly and lawfully issued on September 15, 1998, describing and claiming the invention entitled

… … …

… … …

"EYEGLASS FRONT" protecting the sunglass design marketed by Oakley under the name "Romeo"®. A true copy of U.S. Patent No. D398,326 is attached hereto as Exhibit 16.

46. Oakley is informed and believes, and thereupon alleges that the Defendants, and each of them, are selling sunglasses that copy U.S. Patent No. D398,326 of Oakley. The copy Oakley sunglasses sold by Defendants, and each of them, embody the subject matter claimed in Oakley's U.S. Patent No. D398,326 without any license thereunder and is thereby infringing said patent. Oakley is informed and believes and based thereon alleges that Defendants, and each of them, supplied said imitation Oakley sunglasses to various distributors, retailers, and retail customers.

47. Oakley is the owner by assignment of U.S. Patent No. D463,478S duly and lawfully issued on September 24, 2002, describing and claiming the invention entitled "EYEGLASS AND EYEGLASS COMPONENTS" protecting the sunglass design marketed by Oakley under the name "Scar"®. A true copy of U.S. Patent No. D463,478S is attached hereto as Exhibit 17.

48. Oakley is informed and believes, and thereupon alleges that the Defendants, and each of them, are selling sunglasses that copy U.S. Patent No. D463,478S of Oakley. The copy Oakley sunglasses sold by Defendants, and each of them, embody the subject matter claimed in Oakley's U.S. Patent No. D463,478S without any license thereunder and is thereby infringing said patent. Oakley is informed and believes and based thereon alleges that Defendants, and each of them, supplied said imitation Oakley sunglasses to various distributors, retailers, and retail customers.

49. Oakley is the owner by assignment of U.S. Patent No. D384,686 duly and lawfully issued on October 7, 1997, describing and claiming the invention entitled "EYEGLASS FRONT" protecting the sunglass design marketed by Oakley under the name "Straight Jacket"®. A true copy of U.S. Patent No. D384,686 is attached hereto as Exhibit 18.

50. Oakley is informed and believes, and thereupon alleges that the Defendants, and each of them, are selling sunglasses that copy U.S. Patent No. D384,686 of Oakley. The copy Oakley sunglasses sold by Defendants, and each of them, embody the subject matter claimed in Oakley's U.S. Patent No. D384,686 without any license thereunder and is thereby infringing said patent. Oakley is informed and believes and based thereon alleges that Defendants, and each of them, supplied said imitation Oakley sunglasses to various distributors, retailers, and retail customers.

51. Oakley is the owner by assignment of U.S. Patent No. D477,623S duly and lawfully issued on July 22, 2003, describing and claiming the invention entitled "EYEGLASS FRONT" protecting the sunglass design marketed by Oakley under the name "Splice"®. A true copy of U.S. Patent No. D477,623S is attached hereto as Exhibit 19.

52. Oakley is informed and believes, and thereupon alleges that the Defendants, and each of them, are selling sunglasses that copy U.S. Patent No. D477,623S of Oakley. The copy Oakley sunglasses sold by Defendants, and each of them, embody the subject matter claimed in Oakley's U.S. Patent No. D477,623S without any license thereunder and is thereby infringing said patent. Oakley is informed and believes and based thereon alleges that Defendants, and each of them, supplied said imitation Oakley sunglasses to various distributors, retailers, and retail customers.

53. Oakley is the owner by assignment of U.S. Patent No. D462,375S duly and lawfully issued on September 3, 2002, describing and claiming the invention entitled "EYEGLASS AND EYEGLASS COMPONENTS" protecting the sunglass design marketed by Oakley under the name "Square Wire® 2.0". A true copy of U.S. Patent No. D462,375S is attached hereto as Exhibit 20.

54. Oakley is informed and believes, and thereupon alleges that the Defendants, and each of them, are selling sunglasses that copy U.S. Patent No. D462,375S of Oakley. The copy Oakley sunglasses sold by Defendants, and each of them, embody the

subject matter claimed in Oakley's U.S. Patent No. D462,375S without any license thereunder and is thereby infringing said patent. Oakley is informed and believes and based thereon alleges that Defendants, and each of them, supplied said imitation Oakley sunglasses to various distributors, retailers, and retail customers.

55. Oakley is the owner by assignment of U.S. Patent No. D479,533S duly and lawfully issued on September 9, 2003, describing and claiming the invention entitled "EYEGLASS AND EYEGLASS COMPONENTS" protecting the sunglass design marketed by Oakley under the name "Wire Tap" TM. A true copy of U.S. Patent No. D479,533S is attached hereto as Exhibit 21.

56. Oakley is informed and believes, and thereupon alleges that the Defendants, and each of them, are selling sunglasses that copy U.S. Patent No. D479,533S of Oakley. The copy Oakley sunglasses sold by Defendants, and each of them, embody the subject matter claimed in Oakley's U.S. Patent No. D479,533S without any license thereunder and is thereby infringing said patent. Oakley is informed and believes and based thereon alleges that Defendants, and each of them, supplied said imitation Oakley sunglasses to various distributors, retailers, and retail customers.

57. Defendants received written notice of Oakley's proprietary rights in its trademarks and patents by way of actual written notice. Defendants were warned by Oakley's attorneys of record regarding his sale of counterfeit Oakley products bearing Oakley's trademarks at least on July 5, 2001. Further, Defendants received constructive notice of Oakley's trademarks and patents as Oakley caused its trademarks and patents to be placed plainly on the product and/or packaging. Despite actual and constructive knowledge, Defendants continued to infringe Oakley's trademark rights. On information and belief, such infringement by Defendants have been willful and wanton.

58. Since 1993, Oakley has expended large sums of money in the promotion of its "Eye Jacket® 3.0", "Fives® 2.0", and "Half Jacket"TM, lines of sunglasses. As a result of Oakley's promotional efforts, these sunglass lines have become and are now widely

known and recognized in this District and elsewhere as emanating from and authorized by Oakley.

59. Oakley's "Eye Jacket® 3.0", "Fives® 2.0", and "Half Jacket"™ product lines are inherently distinctive in appearance, and have become, through widespread public acceptance, a distinctive designation of the source of origin of goods offered by Oakley and an asset of incalculable value as a symbol of Oakley and its quality goods and good will.

60. Oakley is informed and believes and thereupon alleges that the Defendants' "Eye Jacket® 3.0", "Fives® 2.0", and "Half Jacket"™ sunglass copies are designed, manufactured, packaged, advertised, displayed and sold expressly to profit from the demand created by Oakley for the ornamental and inherently distinctive features of the Oakley sunglasses and to trade on Oakley's goodwill and reputation.

61. Oakley is informed and believes, and thereupon alleges, that Defendants' copy "Eye Jacket® 3.0", "Fives® 2.0", and "Half Jacket"™ sunglasses are inferior products to the authentic Oakley sunglasses. Oakley is further informed and believes and thereupon alleges that as a result of the inferior quality Defendants copies of Oakley's "Eye Jacket® 3.0", "Fives® 2.0", and "Half Jacket"™ sunglasses, they are sold in the marketplace at a lower price than are the authentic Oakley sunglasses. As a result, Oakley has been damaged significantly in the sunglass market. Oakley contends and believes that its image and the reputation of its products has been tarnished and diminished by Defendants' sale of Oakley copy sunglasses of inferior quality.

62. Oakley is further informed and believes and thereupon alleges that the presence of Defendants' "Eye Jacket® 3.0", "Fives® 2.0", and "Half Jacket"™ sunglass copies in the marketplace damages the value of Oakley's exclusive rights. The presence of the copies in the marketplace is likely to diminish the apparent exclusivity of the genuine Oakley products thereby dissuading potential customers who otherwise would have sought the distinctive Oakley sunglass designs. Upon information and belief,

Oakley alleges that such deception has misled, and continues to mislead, and confuse many purchasers to buy the products sold by Defendants and/or has misled non-purchasers to believe the sunglass copies emanate from or are authorized by Oakley.

63. Oakley is informed and believes and thereupon alleges that the Defendants' sale of the copy sunglasses has resulted in lost sales, has reduced the business and profit of Oakley, and has greatly injured the general reputation of Oakley due to the inferior quality of the copies, all to Oakley's damage in an amount not yet fully determined.

64. The exact amount of profits realized by Defendants as a result of their infringing activities, are presently unknown to Oakley, as are the exact amount of damages suffered by Oakley as a result of said activities. These profits and damages cannot be accurately ascertained without an accounting. Further, Defendants' actions are irreparably injuring Oakley and will continue unless and until enjoined by this court.

**FIRST CLAIM FOR RELIEF**

65. The allegations of paragraphs 1 through 64 are repled and realleged as though fully set forth herein.

66. This is a claim for trademark infringement, and arises under 15 U.S.C. § 1125(a) against all Defendants, and each of them.

67. Jurisdiction is founded upon 15 U.S.C. § 1121.

68. Oakley is the owner of U.S. Registered Trademark No. 1,980,039 which confer on Oakley the exclusive right to use these trademarks in commerce. A true and correct copy of U.S. registered Trademark No. 1,980,039 is attached hereto as Exhibit No. 1.

69. The mark has been in use in commerce in connection with the sale of Oakley products continuously since at least as early as its date of issue. The mark appears clearly on all packaging, advertisements, product brochures, and on almost all Oakley sunglass products, in one way or another.

… … …

70. Defendants, and each of them, through their agents, employees and servants, manufactured, advertised, and sold products bearing Oakley's mark without authority from Oakley for doing so.

71. Oakley is informed and believes, and thereupon alleges, that Defendants' use of Oakley's mark in commerce constitutes trademark infringement, false designation or origin, a false description or representation of goods and wrongfully and falsely represents to the consuming public that the Defendants' advertising and products bearing the Oakley mark originated from or somehow are authorized by Oakley.

72. Oakley is informed and believes, and thereupon alleges, that Defendants' unauthorized use of Oakley's registered mark is likely to cause confusion and has caused confusion in the marketplace as to the source of origin of Defendants' products.

73. Oakley is informed and believes, and thereupon alleges, that Defendants willfully infringed upon Oakley's exclusive rights under its trademarks with the intent to trade upon the good will of Oakley and to injure Oakley.

74. Oakley is informed and believes, and thereupon alleges, that Defendants have derived, received, and will continue to derive and receive from the aforesaid acts of infringement, gains, profits, and advantages in an amount not yet ascertainable, but will be determined at the time of trial.

75. Oakley is informed and believes, and thereupon alleges, that Defendants will continue to infringe Oakley's mark to the great and irreparable injury of Oakley, for which Oakley has no adequate remedy at law unless Defendant are enjoined by this court.

**SECOND CLAIM FOR RELIEF**

76. The allegations of paragraphs 1 through 64 are repled and realleged as though fully set forth herein.

77. This is a claim for trademark infringement, and arises under 15 U.S.C. § 1125(a) against all Defendants, and each of them.

78. Jurisdiction is founded upon 15 U.S.C. § 1121.

79. Oakley is the owner of U.S. Registered Trademark No. 1,984,501 which confer on Oakley the exclusive right to use these trademarks in commerce. A true and correct copy of U.S. registered Trademark No. 1,984,501 is attached hereto as Exhibit No. 2.

80. The mark has been in use in commerce in connection with the sale of Oakley products continuously since at least as early as its date of issue. The mark appears clearly on all packaging, advertisements, product brochures, and on almost all Oakley sunglass products, in one way or another.

81. Defendants, and each of them, through their agents, employees and servants, manufactured, advertised, and sold products bearing Oakley's mark without authority from Oakley for doing so.

82. Oakley is informed and believes, and thereupon alleges, that Defendants' use of Oakley's mark in commerce constitutes trademark infringement, false designation or origin, a false description or representation of goods and wrongfully and falsely represents to the consuming public that the Defendants' advertising and products bearing the Oakley mark originated from or somehow are authorized by Oakley.

83. Oakley is informed and believes, and thereupon alleges, that Defendants' unauthorized use of Oakley's registered mark is likely to cause confusion and has caused confusion in the marketplace as to the source of origin of Defendants' products.

84. Oakley is informed and believes, and thereupon alleges, that Defendants willfully infringed upon Oakley's exclusive rights under its trademarks with the intent to trade upon the good will of Oakley and to injure Oakley.

85. Oakley is informed and believes, and thereupon alleges, that Defendants have derived, received, and will continue to derive and receive from the aforesaid acts of infringement, gains, profits, and advantages in an amount not yet ascertainable, but will be determined at the time of trial.

86. Oakley is informed and believes, and thereupon alleges, that Defendants will continue to infringe Oakley's mark to the great and irreparable injury of Oakley, for which Oakley has no adequate remedy at law unless Defendant are enjoined by this court.

**THIRD CLAIM FOR RELIEF**

87. The allegations of paragraphs 1 through 64 are repled and realleged as though fully set forth herein.

88. This is a claim for trademark infringement, and arises under 15 U.S.C. § 1125(a) against all Defendants, and each of them.

89. Jurisdiction is founded upon 15 U.S.C. § 1121.

90. Oakley is the owner of U.S. Registered Trademark No. 2,146,295 which confer on Oakley the exclusive right to use these trademarks in commerce. A true and correct copy of U.S. registered Trademark No. 2,146,295 is attached hereto as Exhibit No. 3.

91. The mark has been in use in commerce in connection with the sale of Oakley products continuously since at least as early as its date of issue. The mark appears clearly on all packaging, advertisements, product brochures, and on almost all Oakley sunglass products, in one way or another.

92. Defendants, and each of them, through their agents, employees and servants, manufactured, advertised, and sold products bearing Oakley's mark without authority from Oakley for doing so.

93. Oakley is informed and believes, and thereupon alleges, that Defendants' use of Oakley's mark in commerce constitutes trademark infringement, false designation or origin, a false description or representation of goods and wrongfully and falsely represents to the consuming public that the Defendants' advertising and products bearing the Oakley mark originated from or somehow are authorized by Oakley.

… … …

94. Oakley is informed and believes, and thereupon alleges, that Defendants' unauthorized use of Oakley's registered mark is likely to cause confusion and has caused confusion in the marketplace as to the source of origin of Defendants' products.

95. Oakley is informed and believes, and thereupon alleges, that Defendants willfully infringed upon Oakley's exclusive rights under its trademarks with the intent to trade upon the good will of Oakley and to injure Oakley.

96. Oakley is informed and believes, and thereupon alleges, that Defendants have derived, received, and will continue to derive and receive from the aforesaid acts of infringement, gains, profits, and advantages in an amount not yet ascertainable, but will be determined at the time of trial.

97. Oakley is informed and believes, and thereupon alleges, that Defendants will continue to infringe Oakley's mark to the great and irreparable injury of Oakley, for which Oakley has no adequate remedy at law unless Defendant are enjoined by this court.

## FOURTH CLAIM FOR RELIEF

98. The allegations of paragraphs 1 through 64 are repled and realleged as though fully set forth herein.

99. This is a claim for patent infringement, and arises under 35 U.S.C. §§ 271 and 281.

100. Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1338.

101. Oakley is the owner of U.S. Patent No. 5,137,342 which protects technology for an improved elastomeric traction device. A true and correct copy of U.S. Patent No. 5,137,342 is attached hereto as Exhibit 4. By statute, the patent is presumed to be valid and enforceable under 35 U.S.C. ' 282. Further, Defendants have agreed that this patent is valid and enforceable.

… … …

… … …

102. Defendants, and each of them, through their agents, employees and servants, manufactured, imported, and sold, without any rights or license, sunglasses which fall within the scope and claim contained in U.S. Patent No. 5,137,342.

103. Oakley is informed and believes and thereupon alleges that Defendants, and each of them, have willfully infringed upon Oakley's exclusive rights under said patent, with full notice and knowledge thereof. Defendants, and each of them, sold or are selling such infringing sunglasses, have refused to cease the sale thereof, and will continue to do so unless restrained therefrom by this court, all to the great loss and injury of Oakley.

104. Oakley is informed and believes and thereupon alleges that Defendants, and each of them, have derived, received, and will continue to derive and receive from its acts of infringement, gains, profits and advantages in an amount not presently known to Oakley. By reason of these acts of infringement, Oakley has been, and will continue to be, greatly damaged.

105. Defendants will continue to infringe U.S. Patent No. 5,137,342 to the great and irreparable injury of Oakley, for which Oakley has no adequate remedy at law unless said Defendants are enjoined by this court.

**FIFTH CLAIM FOR RELIEF**

106. The allegations of paragraphs 1 through 64 are repled and realleged as though fully set forth herein.

107. This is a claim for patent infringement, and arises under 35 U.S.C. §§ 271 and 281.

108. Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1338.

109. Oakley is the owner of U.S. Patent No. D420,036 which protects the sunglasses marketed by Oakley under the name "A Wire"®. A true and correct copy of U.S. Patent No. D420,036 is attached hereto as Exhibit 5. By statute, the patent is presumed to be valid and enforceable under 35 U.S.C. § 282.

… … …

110. Defendants, and each of them, through their agents, employees and servants, manufactured, imported, and sold, without any rights or license, sunglasses which fall within the scope and claim contained in U.S. Patent No. D420,036.

111. Oakley is informed and believes and thereupon alleges that Defendants, and each of them, have willfully infringed upon Oakley's exclusive rights under said patent, with full notice and knowledge thereof. Defendants, and each of them, sold or are selling such infringing sunglasses, have refused to cease the sale thereof, and will continue to do so unless restrained therefrom by this court, all to the great loss and injury of Oakley.

112. Oakley is informed and believes and thereupon alleges that Defendants, and each of them, have derived, received and will continue to derive and receive from its acts of infringement, gains, profits and advantages in an amount not presently known to Oakley. By reason of these acts of infringement, Oakley has been, and will continue to be, greatly damaged.

113. Defendants will continue to infringe U.S. Patent No. D420,036 to the great and irreparable injury of Oakley, for which Oakley has no adequate remedy at law unless said Defendant are enjoined by this court.

## SIXTH CLAIM FOR RELIEF

114. The allegations of paragraphs 1 through 64 are repled and realleged as though fully set forth herein.

115. This is a claim for patent infringement, and arises under 35 U.S.C. §§ 271 and 281.

116. Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1338.

117. Oakley is the owner of U.S. Patent No. D369,375 which protects the design and ornamentation of sunglasses marketed by Oakley under the name "Eye Jacket"®. A true and correct copy of U.S. Patent No. D369,375 is attached hereto as Exhibit 6. By

… … …

statute, the patent is presumed to be valid and enforceable under 35 U.S.C. § 282. Further, Defendants have acknowledged that this patent is valid and enforceable.

118. Defendants, and each of them, through their agents, employees and servants, manufactured, imported, and sold, without any rights or license, sunglasses which fall within the scope and claim contained in U.S. Patent No. D369,375.

119. Oakley is informed and believes and thereupon alleges that Defendants, and each of them, have willfully infringed upon Oakley's exclusive rights under said patent, with full notice and knowledge thereof. Defendants, and each of them, sold or are selling such infringing sunglasses, have refused to cease the sale thereof, and will continue to do so unless restrained therefrom by this court, all to the great loss and injury of Oakley.

120. Oakley is informed and believes and thereupon alleges that Defendants, and each of them, have derived, received and will continue to derive and receive from its acts of infringement, gains, profits and advantages in an amount not presently known to Oakley. By reason of these acts of infringement, Oakley has been, and will continue to be, greatly damaged.

121. Defendants will continue to infringe U.S. Patent No. D369,375 to the great and irreparable injury of Oakley, for which Oakley has no adequate remedy at law unless said Defendant are enjoined by this court.

**SEVENTH CLAIM FOR RELIEF**

122. The allegations of paragraphs 1 through 64 are repled and realleged as though fully set forth herein.

123. This is a claim for patent infringement, and arises under 35 U.S.C. §§ 271 and 281.

124. Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1338.

125. Oakley is the owner of U.S. Patent No. D408,048 which protects the sunglasses marketed by Oakley under the name "Eye Jacket"®. A true and correct copy

of U.S. Patent No. D408,048 is attached hereto as Exhibit 7. By statute, the patent is presumed to be valid and enforceable under 35 U.S.C. § 282. Further, Defendants have acknowledged that this patent is valid and enforceable.

126. Defendants, and each of them, through their agents, employees and servants, manufactured, imported, and sold, without any rights or license, sunglasses which fall within the scope and claim contained in U.S. Patent No. D408,048.

127. Oakley is informed and believes and thereupon alleges that Defendants, and each of them, have willfully infringed upon Oakley's exclusive rights under said patent, with full notice and knowledge thereof. Defendants, and each of them, sold or are selling such infringing sunglasses, have refused to cease the sale thereof, and will continue to do so unless restrained therefrom by this court, all to the great loss and injury of Oakley.

128. Oakley is informed and believes and thereupon alleges that Defendants, and each of them, have derived, received and will continue to derive and receive from its acts of infringement, gains, profits and advantages in an amount not presently known to Oakley. By reason of these acts of infringement, Oakley has been, and will continue to be, greatly damaged.

129. Defendants will continue to infringe U.S. Patent No. D408,048 to the great and irreparable injury of Oakley, for which Oakley has no adequate remedy at law unless said Defendant are enjoined by this court.

**EIGHTH CLAIM FOR RELIEF**

130. The allegations of paragraphs 1 through 64 are repled and realleged as though fully set forth herein.

131. This is a claim for patent infringement, and arises under 35 U.S.C. §§ 271 and 281.

132. Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1338.

... ... ...

133. Oakley is the owner of U.S. Patent No. D445,443S which protects the sunglasses marketed by Oakley under the name "Eye Jacket® 2.0". A true and correct copy of U.S. Patent No. D445,443S is attached hereto as Exhibit 8. By statute, the patent is presumed to be valid and enforceable under 35 U.S.C. § 282.

134. Defendants, and each of them, through their agents, employees and servants, manufactured, imported, and sold, without any rights or license, sunglasses which fall within the scope and claim contained in U.S. Patent No. D445,443S.

135. Oakley is informed and believes and thereupon alleges that Defendants, and each of them, have willfully infringed upon Oakley's exclusive rights under said patent, with full notice and knowledge thereof. Defendants, and each of them, sold or are selling such infringing sunglasses, have refused to cease the sale thereof, and will continue to do so unless restrained therefrom by this court, all to the great loss and injury of Oakley.

136. Oakley is informed and believes and thereupon alleges that Defendants, and each of them, have derived, received and will continue to derive and receive from its acts of infringement, gains, profits and advantages in an amount not presently known to Oakley. By reason of these acts of infringement, Oakley has been, and will continue to be, greatly damaged.

137. Defendants will continue to infringe U.S. Patent No. D445,443S to the great and irreparable injury of Oakley, for which Oakley has no adequate remedy at law unless said Defendant are enjoined by this court.

**NINTH CLAIM FOR RELIEF**

138. The allegations of paragraphs 1 through 64 are repled and realleged as though fully set forth herein.

139. This is a claim for patent infringement, and arises under 35 U.S.C. §§ 271 and 281.

140. Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1338.

141. Oakley is the owner of U.S. Patent No. D376,381 which protects the sunglasses marketed by Oakley under the name "e Wire"®. A true and correct copy of U.S. Patent No. D376,381 is attached hereto as Exhibit 9. By statute, the patent is presumed to be valid and enforceable under 35 U.S.C. § 282.

142. Defendants, and each of them, through their agents, employees and servants, manufactured, imported, and sold, without any rights or license, sunglasses which fall within the scope and claim contained in U.S. Patent No. D376,381.

143. Oakley is informed and believes and thereupon alleges that Defendants, and each of them, have willfully infringed upon Oakley's exclusive rights under said patent, with full notice and knowledge thereof. Defendants, and each of them, sold or are selling such infringing sunglasses, have refused to cease the sale thereof, and will continue to do so unless restrained therefrom by this court, all to the great loss and injury of Oakley.

144. Oakley is informed and believes and thereupon alleges that Defendants, and each of them, have derived, received and will continue to derive and receive from its acts of infringement, gains, profits and advantages in an amount not presently known to Oakley. By reason of these acts of infringement, Oakley has been, and will continue to be, greatly damaged.

145. Defendants will continue to infringe U.S. Patent No. D376,381 to the great and irreparable injury of Oakley, for which Oakley has no adequate remedy at law unless said Defendant are enjoined by this court.

## TENTH CLAIM FOR RELIEF

146. The allegations of paragraphs 1 through 64 are repled and realleged as though fully set forth herein.

147. This is a claim for patent infringement, and arises under 35 U.S.C. §§ 271 and 281.

148. Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1338.

149. Oakley is the owner of U.S. Patent No. D423,548 which protects the sunglasses marketed by Oakley under the name "Fives"®. A true and correct copy of U.S. Patent No. D423,548 is attached hereto as Exhibit 10. By statute, the patent is presumed to be valid and enforceable under 35 U.S.C. § 282.

150. Defendants, and each of them, through their agents, employees and servants, manufactured, imported, and sold, without any rights or license, sunglasses which fall within the scope and claim contained in U.S. Patent No. D423,548.

151. Oakley is informed and believes and thereupon alleges that Defendants, and each of them, have willfully infringed upon Oakley's exclusive rights under said patent, with full notice and knowledge thereof. Defendants, and each of them, sold or are selling such infringing sunglasses, have refused to cease the sale thereof, and will continue to do so unless restrained therefrom by this court, all to the great loss and injury of Oakley.

152. Oakley is informed and believes and thereupon alleges that Defendants, and each of them, have derived, received and will continue to derive and receive from its acts of infringement, gains, profits and advantages in an amount not presently known to Oakley. By reason of these acts of infringement, Oakley has been, and will continue to be, greatly damaged.

153. Defendants will continue to infringe U.S. Patent No. D423,548 to the great and irreparable injury of Oakley, for which Oakley has no adequate remedy at law unless said Defendant are enjoined by this court.

## ELEVENTH CLAIM FOR RELIEF

154. The allegations of paragraphs 1 through 64 are repled and realleged as though fully set forth herein.

155. This is a claim for patent infringement, and arises under 35 U.S.C. §§ 271 and 281.

156. Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1338.

157. Oakley is the owner of U.S. Patent No. D461,834S which protects the sunglasses marketed by Oakley under the name "Fours"®. A true and correct copy of U.S. Patent No. D461,834S is attached hereto as Exhibit 11. By statute, the patent is presumed to be valid and enforceable under 35 U.S.C. § 282.

158. Defendants, and each of them, through their agents, employees and servants, manufactured, imported, and sold, without any rights or license, sunglasses which fall within the scope and claim contained in U.S. Patent No. D461,834S.

159. Oakley is informed and believes and thereupon alleges that Defendants, and each of them, have willfully infringed upon Oakley's exclusive rights under said patent, with full notice and knowledge thereof. Defendants, and each of them, sold or are selling such infringing sunglasses, have refused to cease the sale thereof, and will continue to do so unless restrained therefrom by this court, all to the great loss and injury of Oakley.

160. Oakley is informed and believes and thereupon alleges that Defendants, and each of them, have derived, received and will continue to derive and receive from its acts of infringement, gains, profits and advantages in an amount not presently known to Oakley. By reason of these acts of infringement, Oakley has been, and will continue to be, greatly damaged.

161. Defendants will continue to infringe U.S. Patent No. D461,834S to the great and irreparable injury of Oakley, for which Oakley has no adequate remedy at law unless said Defendant are enjoined by this court.

**TWELFTH CLAIM FOR RELIEF**

162. The allegations of paragraphs 1 through 64 are repled and realleged as though fully set forth herein.

163. This is a claim for patent infringement, and arises under 35 U.S.C. §§ 271 and 281.

164. Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1338.

165. Oakley is the owner of U.S. Patent No. D399,866 which protects the sunglasses marketed by Oakley under the name "M Frame"®. A true and correct copy of U.S. Patent No. D399,866 is attached hereto as Exhibit 12. By statute, the patent is presumed to be valid and enforceable under 35 U.S.C. § 282.

166. Defendants, and each of them, through their agents, employees and servants, manufactured, imported, and sold, without any rights or license, sunglasses which fall within the scope and claim contained in U.S. Patent No. D399,866.

167. Oakley is informed and believes and thereupon alleges that Defendants, and each of them, have willfully infringed upon Oakley's exclusive rights under said patent, with full notice and knowledge thereof. Defendants, and each of them, sold or are selling such infringing sunglasses, have refused to cease the sale thereof, and will continue to do so unless restrained therefrom by this court, all to the great loss and injury of Oakley.

168. Oakley is informed and believes and thereupon alleges that Defendants, and each of them, have derived, received and will continue to derive and receive from its acts of infringement, gains, profits and advantages in an amount not presently known to Oakley. By reason of these acts of infringement, Oakley has been, and will continue to be, greatly damaged.

169. Defendants will continue to infringe U.S. Patent No. D399,866 to the great and irreparable injury of Oakley, for which Oakley has no adequate remedy at law unless said Defendant are enjoined by this court.

**THIRTEENTH CLAIM FOR RELIEF**

170. The allegations of paragraphs 1 through 64 are repled and realleged as though fully set forth herein.

171. This is a claim for patent infringement, and arises under 35 U.S.C. §§ 271 and 281.

172. Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1338.

173. Oakley is the owner of U.S. Patent No. D422,298 which protects the sunglasses marketed by Oakley under the name "Juliet"®. A true and correct copy of U.S. Patent No. D422,298 is attached hereto as Exhibit 13. By statute, the patent is presumed to be valid and enforceable under 35 U.S.C. § 282.

174. Defendants, and each of them, through their agents, employees and servants, manufactured, imported, and sold, without any rights or license, sunglasses which fall within the scope and claim contained in U.S. Patent No. D422,298.

175. Oakley is informed and believes and thereupon alleges that Defendants, and each of them, have willfully infringed upon Oakley's exclusive rights under said patent, with full notice and knowledge thereof. Defendants, and each of them, sold or are selling such infringing sunglasses, have refused to cease the sale thereof, and will continue to do so unless restrained therefrom by this court, all to the great loss and injury of Oakley.

176. Oakley is informed and believes and thereupon alleges that Defendants, and each of them, have derived, received and will continue to derive and receive from its acts of infringement, gains, profits and advantages in an amount not presently known to Oakley. By reason of these acts of infringement, Oakley has been, and will continue to be, greatly damaged.

177. Defendants will continue to infringe U.S. Patent No. D422,298 to the great and irreparable injury of Oakley, for which Oakley has no adequate remedy at law unless said Defendant are enjoined by this court.

## FOURTEENTH CLAIM FOR RELIEF

178. The allegations of paragraphs 1 through 64 are repled and realleged as though fully set forth herein.

179. This is a claim for patent infringement, and arises under 35 U.S.C. §§ 271 and 281.

180. Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1338.

181. Oakley is the owner of U.S. Patent No. D415,188 which protects the sunglasses marketed by Oakley under the name "Minute"®. A true and correct copy of U.S. Patent No. D415,188 is attached hereto as Exhibit 14. By statute, the patent is presumed to be valid and enforceable under 35 U.S.C. § 282.

182. Defendants, and each of them, through their agents, employees and servants, manufactured, imported, and sold, without any rights or license, sunglasses which fall within the scope and claim contained in U.S. Patent No. D415,188.

183. Oakley is informed and believes and thereupon alleges that Defendants, and each of them, have willfully infringed upon Oakley's exclusive rights under said patent, with full notice and knowledge thereof. Defendants, and each of them, sold or are selling such infringing sunglasses, have refused to cease the sale thereof, and will continue to do so unless restrained therefrom by this court, all to the great loss and injury of Oakley.

184. Oakley is informed and believes and thereupon alleges that Defendants, and each of them, have derived, received and will continue to derive and receive from its acts of infringement, gains, profits and advantages in an amount not presently known to Oakley. By reason of these acts of infringement, Oakley has been, and will continue to be, greatly damaged.

185. Defendants will continue to infringe U.S. Patent No. D415,188 to the great and irreparable injury of Oakley, for which Oakley has no adequate remedy at law unless said Defendant are enjoined by this court.

## FIFTEENTH CLAIM FOR RELIEF

186. The allegations of paragraphs 1 through 64 are repled and realleged as though fully set forth herein.

187. This is a claim for patent infringement, and arises under 35 U.S.C. §§ 271 and 281.

188. Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1338.

189. Oakley is the owner of U.S. Patent No. D470,166S which protects the sunglasses marketed by Oakley under the name "Penny"®. A true and correct copy of U.S. Patent No. D470,166S is attached hereto as Exhibit 15. By statute, the patent is presumed to be valid and enforceable under 35 U.S.C. § 282.

190. Defendants, and each of them, through their agents, employees and servants, manufactured, imported, and sold, without any rights or license, sunglasses which fall within the scope and claim contained in U.S. Patent No. D470,166S.

191. Oakley is informed and believes and thereupon alleges that Defendants, and each of them, have willfully infringed upon Oakley's exclusive rights under said patent, with full notice and knowledge thereof. Defendants, and each of them, sold or are selling such infringing sunglasses, have refused to cease the sale thereof, and will continue to do so unless restrained therefrom by this court, all to the great loss and injury of Oakley.

192. Oakley is informed and believes and thereupon alleges that Defendants, and each of them, have derived, received and will continue to derive and receive from its acts of infringement, gains, profits and advantages in an amount not presently known to Oakley. By reason of these acts of infringement, Oakley has been, and will continue to be, greatly damaged.

193. Defendants will continue to infringe U.S. Patent No. D470,166S to the great and irreparable injury of Oakley, for which Oakley has no adequate remedy at law unless said Defendant are enjoined by this court.

## SIXTEENTH CLAIM FOR RELIEF

194. The allegations of paragraphs 1 through 64 are repled and realleged as though fully set forth herein.

195. This is a claim for patent infringement, and arises under 35 U.S.C. §§ 271 and 281.

196. Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1338.

197. Oakley is the owner of U.S. Patent No. D398,326 which protects the sunglasses marketed by Oakley under the name "Romeo"®. A true and correct copy of U.S. Patent No. D398,326 is attached hereto as Exhibit 16. By statute, the patent is presumed to be valid and enforceable under 35 U.S.C. § 282.

198. Defendants, and each of them, through their agents, employees and servants, manufactured, imported, and sold, without any rights or license, sunglasses which fall within the scope and claim contained in U.S. Patent No. D398,326.

199. Oakley is informed and believes and thereupon alleges that Defendants, and each of them, have willfully infringed upon Oakley's exclusive rights under said patent, with full notice and knowledge thereof. Defendants, and each of them, sold or are selling such infringing sunglasses, have refused to cease the sale thereof, and will continue to do so unless restrained therefrom by this court, all to the great loss and injury of Oakley.

200. Oakley is informed and believes and thereupon alleges that Defendants, and each of them, have derived, received and will continue to derive and receive from its acts of infringement, gains, profits and advantages in an amount not presently known to Oakley. By reason of these acts of infringement, Oakley has been, and will continue to be, greatly damaged.

201. Defendants will continue to infringe U.S. Patent No. D398,326 to the great and irreparable injury of Oakley, for which Oakley has no adequate remedy at law unless said Defendant are enjoined by this court.

## SEVENTEENTH CLAIM FOR RELIEF

202. The allegations of paragraphs 1 through 64 are repled and realleged as though fully set forth herein.

203. This is a claim for patent infringement, and arises under 35 U.S.C. §§ 271 and 281.

204. Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1338.

205. Oakley is the owner of U.S. Patent No. D463,478S which protects the sunglasses marketed by Oakley under the name "Scar"®. A true and correct copy of U.S. Patent No. D463,478S is attached hereto as Exhibit 17. By statute, the patent is presumed to be valid and enforceable under 35 U.S.C. § 282.

206. Defendants, and each of them, through their agents, employees and servants, manufactured, imported, and sold, without any rights or license, sunglasses which fall within the scope and claim contained in U.S. Patent No. D463,478S.

207. Oakley is informed and believes and thereupon alleges that Defendants, and each of them, have willfully infringed upon Oakley's exclusive rights under said patent, with full notice and knowledge thereof. Defendants, and each of them, sold or are selling such infringing sunglasses, have refused to cease the sale thereof, and will continue to do so unless restrained therefrom by this court, all to the great loss and injury of Oakley.

208. Oakley is informed and believes and thereupon alleges that Defendants, and each of them, have derived, received and will continue to derive and receive from its acts of infringement, gains, profits and advantages in an amount not presently known to Oakley. By reason of these acts of infringement, Oakley has been, and will continue to be, greatly damaged.

209. Defendants will continue to infringe U.S. Patent No. D463,478S to the great and irreparable injury of Oakley, for which Oakley has no adequate remedy at law unless said Defendant are enjoined by this court.

**EIGHTEENTH CLAIM FOR RELIEF**

210. The allegations of paragraphs 1 through 64 are repled and realleged as though fully set forth herein.

211. This is a claim for patent infringement, and arises under 35 U.S.C. §§ 271 and 281.

212. Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1338.

213. Oakley is the owner of U.S. Patent No. D384,686 which protects the sunglasses marketed by Oakley under the name "Straight Jacket"®. A true and correct copy of U.S. Patent No. D384,686 is attached hereto as Exhibit 18. By statute, the patent is presumed to be valid and enforceable under 35 U.S.C. § 282.

214. Defendants, and each of them, through their agents, employees and servants, manufactured, imported, and sold, without any rights or license, sunglasses which fall within the scope and claim contained in U.S. Patent No. D384,686.

215. Oakley is informed and believes and thereupon alleges that Defendants, and each of them, have willfully infringed upon Oakley's exclusive rights under said patent, with full notice and knowledge thereof. Defendants, and each of them, sold or are selling such infringing sunglasses, have refused to cease the sale thereof, and will continue to do so unless restrained therefrom by this court, all to the great loss and injury of Oakley.

216. Oakley is informed and believes and thereupon alleges that Defendants, and each of them, have derived, received and will continue to derive and receive from its acts of infringement, gains, profits and advantages in an amount not presently known to Oakley. By reason of these acts of infringement, Oakley has been, and will continue to be, greatly damaged.

217. Defendants will continue to infringe U.S. Patent No. D384,686 to the great and irreparable injury of Oakley, for which Oakley has no adequate remedy at law unless said Defendant are enjoined by this court.

## NINETEENTH CLAIM FOR RELIEF

218. The allegations of paragraphs 1 through 64 are repled and realleged as though fully set forth herein.

219. This is a claim for patent infringement, and arises under 35 U.S.C. §§ 271 and 281.

220. Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1338.

221. Oakley is the owner of U.S. Patent No. D477,623S which protects the sunglasses marketed by Oakley under the name "Splice"®. A true and correct copy of U.S. Patent No. D477,623S is attached hereto as Exhibit 19. By statute, the patent is presumed to be valid and enforceable under 35 U.S.C. § 282.

222. Defendants, and each of them, through their agents, employees and servants, manufactured, imported, and sold, without any rights or license, sunglasses which fall within the scope and claim contained in U.S. Patent No. D477,623S.

223. Oakley is informed and believes and thereupon alleges that Defendants, and each of them, have willfully infringed upon Oakley's exclusive rights under said patent, with full notice and knowledge thereof. Defendants, and each of them, sold or are selling such infringing sunglasses, have refused to cease the sale thereof, and will continue to do so unless restrained therefrom by this court, all to the great loss and injury of Oakley.

224. Oakley is informed and believes and thereupon alleges that Defendants, and each of them, have derived, received and will continue to derive and receive from its acts of infringement, gains, profits and advantages in an amount not presently known to Oakley. By reason of these acts of infringement, Oakley has been, and will continue to be, greatly damaged.

225. Defendants will continue to infringe U.S. Patent No. D477,623S to the great and irreparable injury of Oakley, for which Oakley has no adequate remedy at law unless said Defendant are enjoined by this court.

## TWENTIETH CLAIM FOR RELIEF

226. The allegations of paragraphs 1 through 64 are repled and realleged as though fully set forth herein.

227. This is a claim for patent infringement, and arises under 35 U.S.C. §§ 271 and 281.

228. Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1338.

229. Oakley is the owner of U.S. Patent No. D462,375S which protects the sunglasses marketed by Oakley under the name "Square Wire® 2.0". A true and correct copy of U.S. Patent No. D462,375S is attached hereto as Exhibit 20. By statute, the patent is presumed to be valid and enforceable under 35 U.S.C. § 282.

230. Defendants, and each of them, through their agents, employees and servants, manufactured, imported, and sold, without any rights or license, sunglasses which fall within the scope and claim contained in U.S. Patent No. D462,375S.

231. Oakley is informed and believes and thereupon alleges that Defendants, and each of them, have willfully infringed upon Oakley's exclusive rights under said patent, with full notice and knowledge thereof. Defendants, and each of them, sold or are selling such infringing sunglasses, have refused to cease the sale thereof, and will continue to do so unless restrained therefrom by this court, all to the great loss and injury of Oakley.

232. Oakley is informed and believes and thereupon alleges that Defendants, and each of them, have derived, received and will continue to derive and receive from its acts of infringement, gains, profits and advantages in an amount not presently known to Oakley. By reason of these acts of infringement, Oakley has been, and will continue to be, greatly damaged.

233. Defendants will continue to infringe U.S. Patent No. D462,375S to the great and irreparable injury of Oakley, for which Oakley has no adequate remedy at law unless said Defendant are enjoined by this court.

## TWENTY-FIRST CLAIM FOR RELIEF

234. The allegations of paragraphs 1 through 64 are repled and realleged as though fully set forth herein.

235. This is a claim for patent infringement, and arises under 35 U.S.C. §§ 271 and 281.

236. Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1338.

237. Oakley is the owner of U.S. Patent No. D479,533S which protects the sunglasses marketed by Oakley under the name "Wire Tap"™. A true and correct copy of U.S. Patent No. - is attached hereto as Exhibit 21. By statute, the patent is presumed to be valid and enforceable under 35 U.S.C. § 282.

238. Defendants, and each of them, through their agents, employees and servants, manufactured, imported, and sold, without any rights or license, sunglasses which fall within the scope and claim contained in U.S. Patent No. D479,533S.

239. Oakley is informed and believes and thereupon alleges that Defendants, and each of them, have willfully infringed upon Oakley's exclusive rights under said patent, with full notice and knowledge thereof. Defendants, and each of them, sold or are selling such infringing sunglasses, have refused to cease the sale thereof, and will continue to do so unless restrained therefrom by this court, all to the great loss and injury of Oakley.

240. Oakley is informed and believes and thereupon alleges that Defendants, and each of them, have derived, received and will continue to derive and receive from its acts of infringement, gains, profits and advantages in an amount not presently known to Oakley. By reason of these acts of infringement, Oakley has been, and will continue to be, greatly damaged.

241. Defendants will continue to infringe U.S. Patent No. D479,533S to the great and irreparable injury of Oakley, for which Oakley has no adequate remedy at law unless said Defendant are enjoined by this court.

## TWENTY-SECOND CLAIM FOR RELIEF

## (TRADE DRESS INFRINGEMENT)

242. Oakley realleges paragraphs 1 through 64 as though set forth fully at this point.

243. This is an action for trade dress infringement and false designation of origin pursuant to 15 U.S.C. § 1125(a) against Defendant.

244. Since 2001, Oakley has marketed and sold its "Eye Jacket® 3.0" lines of sunglasses. The configuration of Oakley's "Eye Jacket 3.0" sunglass is distinctive and well-recognized by the industry and consumers as emanating from Oakley. The "Eye Jacket® 3.0" sunglass has enjoyed enormous commercial success, which is expected to continue, and have become, through wide-spread recognition, an indicator of Oakley as the source of the products.

245. Oakley is informed and believes and thereupon alleges that the Defendant's sale of copies of Oakley's "Eye Jacket® 3.0" sunglass configuration constitutes trade dress infringement and unfair competition, as a false designation of origin, a false description or representation of goods, and false representation to the consuming public that the Defendant's sunglasses originated from or somehow are authorized by or affiliated with Oakley.

246. Oakley is informed and believes and thereupon alleges that the actions of Defendant were done willfully, knowingly and maliciously with the intent to trade upon the good will of Oakley and to injure Oakley.

247. The Defendant's acts are in violation of 15 U.S.C. § 1125 (a) and will continue to the great and irreparable injury of Oakley until enjoined by this Court.

**TWENTY-THIRD CLAIM FOR RELIEF**

**(TRADE DRESS INFRINGEMENT)**

248. Oakley realleges paragraphs 1 through 64 as though set forth fully at this point.

249. This is an action for trade dress infringement and false designation of origin pursuant to 15 U.S.C. § 1125(a) against Defendant.

250. Since 2001, Oakley has marketed and sold its "Fives® 2.0" lines of sunglasses. This model has been one of Oakley's best sellers since its introduction. The configuration of Oakley's "Fives® 2.0" sunglass is distinctive and well-recognized by the industry and consumers as emanating from Oakley. The "Fives® 2.0" sunglass has enjoyed enormous commercial success, which is expected to continue, and have

become, through wide-spread recognition, an indicator of Oakley as the source of the products.

251. Oakley is informed and believes and thereupon alleges that the Defendant's sale of copies of Oakley's "Fives® 2.0" sunglass configuration constitutes trade dress infringement and unfair competition, as a false designation of origin, a false description or representation of goods, and false representation to the consuming public that the Defendant's sunglasses originated from or somehow are authorized by or affiliated with Oakley.

252. Oakley is informed and believes and thereupon alleges that the actions of Defendant were done willfully, knowingly and maliciously with the intent to trade upon the good will of Oakley and to injure Oakley.

253. The Defendant's acts are in violation of 15 U.S.C. § 1125 (a) and will continue to the great and irreparable injury of Oakley until enjoined by this Court.

## TWENTY-FOURTH CLAIM FOR RELIEF

## (TRADE DRESS INFRINGEMENT)

254. Oakley realleges paragraphs 1 through 64 as repled and realleged as though set forth fully at this point.

255. This is an action for trade dress infringement and false designation of origin pursuant to 15 U.S.C. § 1125(a) against Defendant.

256. Since 2001, Oakley has marketed and sold its "Half Jacket"™ lines of sunglasses. This model has been one of Oakley's best sellers since its introduction. The configuration of Oakley's "Half Jacket"™ sunglass is distinctive and well-recognized by the industry and consumers as emanating from Oakley. The "Half Jacket"™ sunglass has enjoyed enormous commercial success which is expected to continue, and have become, through wide-spread recognition, an indicator of Oakley as the source of the products.

257. Oakley is informed and believes and thereupon alleges that the Defendant's sale of copies of Oakley's "Half Jacket"™ sunglass configuration constitutes trade dress

infringement and unfair competition, as a false designation of origin, a false description or representation of goods, and false representation to the consuming public that the Defendant's sunglasses originated from or somehow are authorized by or affiliated with Oakley.

258. Oakley is informed and believes and thereupon alleges that the actions of Defendant were done willfully, knowingly and maliciously with the intent to trade upon the good will of Oakley and to injure Oakley.

259. The Defendant's acts are in violation of 15 U.S.C. § 1125 (a) and will continue to the great and irreparable injury of Oakley until enjoined by this Court.

## TWENTY-FIFTH CLAIM FOR RELIEF

242. Oakley realleges paragraph 1 through 64, above, as though fully set forth at this point.

243. This is a cause of action for breach of contract.

244. Jurisdiction and venue are proper in this Court, pursuant to the terms of a forum selection clause included in the Settlement Agreement that forms the basis of this claim for relief.

245. In 2001, Oakley found that Defendants Weilacher and United Research were selling counterfeit Oakley sunglasses on a website, www.Replicawarehouse.com, which infringed Oakley's trademarks and patents. Accordingly, Oakley filed the Previous Lawsuit, in the Southern District of California, Case No. 01 CV 1486 K (JAH).

246. In resolution of the Previous Lawsuit, the parties agreed to a Final Consent Judgment and entered into a Settlement and Release Agreement. The Settlement and Release Agreement is attached hereto and incorporated by reference as Exhibit 23. The relevant terms of the Settlement and Release Agreement read:

> "Weilacher, ReplicaWarehouse.com, and United Research Permanently Enjoined As of the date of this Agreement, Weilacher, ReplicaWarehouse.com and United Research, and their respective members, managers, officers, directors, principals, agents, servants, employees, suppliers, successors, assigns and all those in active concert or participation with Weilacher, ReplicaWarehouse.com, and United

Research, agree to be permanently enjoined and restrained from:

(a) importing, selling, offering for sale, or advertising the sale of any sunglasses that infringe Oakley's federally registered trademark numbers 1,980,039, 1,984,501, and 2,146,295, without a valid license from Oakley to do so;

(b) making, using, importing, or selling any sunglasses that infringe Oakley's U.S. Patent Nos. 5,137,342, D369,375, and D408,048, without a valid license from Oakley, and to further refrain from aiding and abetting in the facilitation of activities constituting further patent infringement; and

(c) diluting, diminishing, or tarnishing the distinctive nature and inherent value of any Oakley trademarks."

"Compensation To Be Paid Oakley Weilacher, ReplicaWarehouse.com and United Research acknowledge that Oakley is entitled to damages equaling at least twenty-thousand dollars ($20,000) arising out of the unlawful sale of Oakley copy sunglasses at www.ReplicaWarehouse.com since April 2000 until the present. Nonetheless, in consideration of the mutual covenants contained in this Agreement and to resolve this dispute, Weilacher, ReplicaWarehouse.com and United Research agree to jointly and severally pay Oakley the amount of fifteen thousand dollars ($15,000.00) as compensation for their infringing sales."

"8.7. Disputes Regarding This Agreement In the event of any dispute between or among the parties regarding this Agreement, the following provisions shall apply. This Agreement shall be construed and controlled in accordance with the laws of the State of California. The Parties agree that any dispute hereunder shall be subject to the exclusive jurisdiction of a court of competent jurisdiction in San Diego County, California, and the Parties hereby waive the right to have any dispute or claim arising hereunder tried or brought elsewhere. The Parties agree that in litigation to enforce the provisions of this Settlement Agreement, the prevailing party shall be entitled to, in addition to costs and other relief of the court, reasonable attorney's fees."

247. The Settlement and Release Agreement further provided that if Defendants failed to pay compensation, then Oakley was entitled to the full $20,000, as liquidated damages.

248. Defendants breached their agreement by failing to pay Oakley compensation. Defendants never paid any compensation to Oakley.

249. Further, Defendants breached their agreement by violating the permanent injunction, which was further reduced to writing in the Final Consent Judgment filed with the Court, attached as Exhibit 22.

250. Consequently, Oakley has been damaged in the amount of at least $20,000, plus interest, as a direct result of Defendant Weilacher's and United Research's breach of the Settlement and Release Agreement.

251. Further, pursuant to paragraph 8.7 of the Settlement Agreement, Oakley is entitled to its attorneys' fees arising out of this action.

WHEREFORE, Plaintiff Oakley, Inc. prays as follows:

1. That Defendants, and each of them, be adjudicated to have infringed Oakley's Registered Trademark No. 1,980,039, 1,984,501, and 2,146,295, and that said trademarks are valid and enforceable and are owned by Oakley;

2. That Defendants, and each of them, be adjudicated to have infringed Oakley's U.S. Patent No. 5,137,342, D369,375 D408,048, D445,443, D376,381, D423,548, D461,834, D399,866, D422,298, D415,188, D470,166, D398,326, D463,478, D384,686, D477,623, D462,375, and D479,533 and that said patents are valid and enforceable and owned by Oakley;

3. That the Defendants, and each of them, be adjudicated to have infringed Oakley's "Eye Jacket 3.0", "Fives 2.0", and "Half Jacket"™ trade dress, and that said trade dress rights are enforceable and owned by Oakley;

4. That Defendants, and each of them, as well as their agents, servants, employees, and attorneys and all persons in active concert and participation with them, be enjoined and restrained, during the pendency of this action and permanently thereafter from:

   a. Using the Oakley's Registered Trademark Nos. 1,980,039, 1,984,501, and 2,146,295, or any mark similar thereto in connection with the sale of any goods;

b. Committing any acts which may cause purchasers to believe that the Defendant or the products Defendant is selling are sponsored or authorized by, or are in any way associated with Plaintiff;

c. Selling, passing off, or inducing or enabling others to sell or pass off any products as products produced by Plaintiff, which products are not Plaintiff's or are not produced under the control and supervision and approved by Plaintiff; and

d. Infringing Plaintiff's trademark rights;

5. That Defendants, and each of them, as well as their agents, servants, employees, and attorneys, and all these persons in active concert or participation with Defendant, be forthwith preliminary and thereafter permanently enjoined from infringing U.S. Patent Nos. 5,137,342, D369,375 D408,048, D445,443, D376,381, D423,548, D461,834, D399,866, D422,298, D415,188, D470,166, D398,326, D463,478, D384,686, D477,623, D462,375, and D479,533;

6. That Defendants, and each of them, as well as their agents, servants, employees, and attorneys, and all these persons in active concert or participation with Defendant, be forthwith preliminary and thereafter permanently enjoined from infringing Oakley's "Eye Jacket 3.0", "Fives 2.0", and "Half Jacket"™ trade dress;

7. That Defendants be directed to file with this Court and serve upon Oakley within 30 days after the service of the injunction, a report in writing under oath, setting forth in detail the manner and form in which Defendants have complied with the injunction;

8. That Oakley be awarded an assessment of damages for Defendants' infringement of U.S. Patent Nos. 5,137,342, D369,375 D408,048, D445,443, D376,381, D423,548, D461,834, D399,866, D422,298, D415,188, D470,166, D398,326, D463,478, D384,686, D477,623, D462,375, and D479,533, together

with an award of such damages, all in accordance with 35 U.S.C. § 284;

9. That Oakley be awarded an assessment of interest against Defendants, together with an award of such interest, in accordance with 35 U.S.C. § 284;

10. That Oakley be awarded treble damages against the Defendants for their willful infringement of Oakley's patents, pursuant to 35 U.S.C. § 284;

11. For all of Defendants' profits derived from his infringement of Plaintiff's patent, trademark, and trade dress rights in accordance with 15 U.S.C. § 1117 and 35 U.S.C. § 289;

12. For an order requiring Defendants to deliver up and destroy all infringing sunglasses;

13. That an award of reasonable costs, expenses, and attorney's fees be awarded against Defendants pursuant to 15 U.S.C. § 1116(a) and paragraph 8.7 of the Settlement and Release Agreement; and

14. That Oakley have such other and further relief as the circumstances of this case may require and as this Court may deem just and proper.

DATED: 12/10/03

WEEKS, KAUFMAN, NELSON & JOHNSON

[signature]

GREGORY K. NELSON
Attorney for Plaintiff, Oakley, Inc.

JURY DEMAND

Plaintiff Oakley, Inc. hereby requests a trial by jury in this matter.

DATED: 12/10/03

WEEKS, KAUFMAN, NELSON & JOHNSON

[signature]

GREGORY K. NELSON
Attorney for Plaintiff, Oakley, Inc.

**Int. Cls.: 9 and 25**

**Prior U.S. Cls.: 21, 22, 23, 26, 36, 38, and 39**

**Reg. No. 1,980,039**

# United States Patent and Trademark Office

**Registered June 11, 1996**

## TRADEMARK
### PRINCIPAL REGISTER

OAKLEY, INC. (CALIFORNIA CORPORATION)
IRVINE, CA 92718

FOR: PROTECTIVE AND/OR ANTI-GLARE EYEWEAR, NAMELY SUNGLASSES, GOGGLES, SPECTACLES AND THEIR PARTS AND ACCESSORIES, NAMELY REPLACEMENT LENSES, EARSTEMS, FRAMES, NOSE PIECES AND FOAM STRIPS; CASES SPECIALLY ADAPTED FOR PROTECTIVE AND/OR ANTI-GLARE EYEWEAR AND THEIR PARTS AND ACCESSORIES, IN CLASS 9 (U.S. CLS. 21, 23, 26, 36 AND 38).

FIRST USE 11-0-1993; IN COMMERCE 11-0-1993.

FOR: CLOTHING, HEADWEAR AND FOOTWEAR, NAMELY T-SHIRTS, SWEATSHIRTS, BLOUSES, SWEATERS, SPORT SHIRTS, JERSEYS, SHORTS, TROUSERS, PANTS, SWEATPANTS, SKI PANTS, RACING PANTS, JEANS, COATS, VESTS, JACKETS, SWIMWEAR, HATS, VISORS, CAPS, GLOVES, BELTS, SOCKS, SANDALS AND SHOES, IN CLASS 25 (U.S. CLS. 22 AND 39).

FIRST USE 11-0-1993; IN COMMERCE 11-0-1993.

OWNER OF U.S. REG. NOS. 1,169,945, 1,552,583, AND OTHERS.

SN 74-485,652, FILED 2-2-1994.

DAVID H. STINE, EXAMINING ATTORNEY

**Int. Cls.: 9 and 25**

**Prior U.S. Cls.: 21, 22, 23, 26, 36, 38, and 39**

**Reg. No. 1,984,501**

# United States Patent and Trademark Office

Registered July 2, 1996

## TRADEMARK
## PRINCIPAL REGISTER

OAKLEY, INC. (CALIFORNIA CORPORATION)
10 HOLLAND
IRVINE, CA 92718

FOR: PROTECTIVE AND/OR ANTI-GLARE EYEWEAR, NAMELY SUNGLASSES, GOGGLES, SPECTACLES AND THEIR PARTS AND ACCESSORIES, NAMELY REPLACEMENT LENSES, EARSTEMS, FRAMES, NOSE PIECES AND FOAM STRIPS; CASES SPECIALLY ADAPTED FOR PROTECTIVE AND/OR ANTI-GLARE EYEWEAR AND THEIR PARTS AND ACCESSORIES, IN CLASS 9 (U.S. CLS. 21, 23, 26, 36 AND 38).

FIRST USE 11-0-1993; IN COMMERCE 11-0-1993.

FOR: CLOTHING AND HEADWEAR, NAMELY T-SHIRTS, SWEATSHIRTS, JACKETS, HATS, AND CAPS, IN CLASS 25 (U.S. CLS. 22 AND 39).

FIRST USE 11-0-1993; IN COMMERCE 11-0-1993.

SN 74-485,534, FILED 2-2-1994.

DAVID H. STINE, EXAMINING ATTORNEY

Int. Cl.: 9

Prior U.S. Cls.: 21, 23, 26, 36 and 38

Reg. No. 2,146,295

# United States Patent and Trademark Office

Registered Mar. 24, 1998

## TRADEMARK
## PRINCIPAL REGISTER



OAKLEY, INC. (WASHINGTON CORPORATION)
ONE ICON
FOOTHILL RANCH, CA 92610

FOR: PROTECTIVE AND/OR ANTI-GLARE EYEWEAR, NAMELY, SUNGLASSES, GOGGLES, SPECTACLES AND THEIR PARTS AND ACCESSORIES, NAMELY, REPLACEMENT LENSES, EARSTEMS, FRAMES, NOSE PIECES AND FOAM STRIPS; CASES SPECIALLY ADAPTED FOR PROTECTIVE AND/OR ANTI-GLARE EYEWEAR AND THEIR PARTS AND ACCESSORIES, IN CLASS 9 (U.S. CLS. 21, 23, 26, 36 AND 38).

FIRST USE 12-0-1994; IN COMMERCE 12-0-1994.

OWNER OF U.S. REG. NOS. 1,904,181, 1,990,262 AND OTHERS.

THE MARK CONSISTS OF AN ELLIPSE. THE MATTER SHOWN BY THE DOTTED LINES ON THE DRAWING IS NOT PART OF THE MARK AND SERVES ONLY TO SHOW THE RELATIVE POSITION OF THE MARK ON THE GOODS.

SER. NO. 75-259,669, FILED 3-18-1997.

ESTHER BELENKER, EXAMINING ATTORNEY

EXHIBIT 3, Page 1 of 1

US005137342A

# United States Patent [19]

Jannard et al.

[11] Patent Number: 5,137,342

[45] Date of Patent: * Aug. 11, 1992

[54] EYEWEAR TRACTION DEVICE

[75] Inventors: James H. Jannard, San Juan Capistrano; Gregory F. Arnette, South Laguna Beach, both of Calif.

[73] Assignee: Oakley, Inc., Irvine, Calif.

[ * ] Notice: The portion of the term of this patent subsequent to Oct. 8, 2008 has been disclaimed.

[21] Appl. No.: 695,683

[22] Filed: May 3, 1991

Related U.S. Application Data

[63] Continuation of Ser. No. 436,474, Nov. 20, 1989, Pat. No. 5,054,903.

[51] Int. Cl.⁵ ............................................. G02S 5/14

[52] U.S. Cl. ................................... 351/123; 351/122; 351/111

[58] Field of Search .............. 351/122, 123, 111, 119, 351/121

[56] References Cited

U.S. PATENT DOCUMENTS

2,031,771 2/1935 Grier ................................ 351/123
2,561,402 7/1951 Nelson .
2,949,638 8/1960 Butler .
3,684,356 8/1972 Bates .
3,741,635 6/1973 Wortman .
4,074,932 2/1978 Thill ................................ 351/123
4,563,066 1/1986 Bononi .
4,662,729 5/1987 Dobson .
4,732,465 3/1988 Field .
4,786,158 11/1988 Barfus-Shanks .

FOREIGN PATENT DOCUMENTS

62-12123 1/1987 Japan .

*Primary Examiner*—Paul M. Dzierzynski
*Attorney, Agent, or Firm*—Knobbe, Martens, Olson & Bear

[57] ABSTRACT

In eyewear employing temples, a substantially cylindrical elastomeric traction member is disposed in a recessed seat which extends along a length of each temple to provide a contact area between the temple and the head. The traction member and seat may be sized so that the traction member is substantially flush with the adjacent temple or alternatively, the traction member may extend beyond the periphery of the temple. In either configuration, the traction device extends substantially parallel to the length of the temple.

32 Claims, 1 Drawing Sheet



FIG. 1




FIG. 2







FIG. 3




FIG. 4




FIG. 5

FIG. 6



# EYEWEAR TRACTION DEVICE

This application is a continuation of application Ser. No. 436,474 filed Nov. 20, 1989, now U.S. Pat. No. 5,054,90.

## BACKGROUND OF THE INVENTION

The present invention relates to eyewear and, more particularly, to a selectively attachable traction device for improving the retention of the eyewear about the head and a method for using the same.

While corrective lenses are specifically crafted to accommodate the unique vision defects of an individual, the frames used to retain the lenses are typically a standard size and not crafted to conform to the particular contours of an individual's head. Lenses which are employed in filtering eyewear such as sunglasses are also typically retained in stock frames. However, it is virtually impossible to mass produce stock frames which fit every individual's head; therefore, stock frames are constructed to conform to an idealized "standard" adult head.

As a result, such frames often result in a fit which is either too tight or too loose about the head of an individual. A tight fitting frame may cause localized pain and headaches, while a loose fitting frame may allow the eyewear to fall from the head and damage the frame or the lens. This is particularly disadvantageous for protective eyewear such as sunglasses which are to be used in active sports, such as bicycle racing or skiing. Additionally, in the event that corrective lenses vary in weight between the lenses, the uneven weight distribution may cause frames to locally abrade the skin.

A variety of means have been employed to improve the securing of eyewear to the head. These devices have included the use of loose strings which connect the temples of the eyewear around the back of the wearer's head, thereby preventing the glasses from becoming completely displaced from the body. Alternatively, an elastic strap connecting the temples has been employed to engage the wearer's head and secure the eyewear in the desired position.

Perhaps most frequently used, temples have been provided with a hook at the posterior end for engaging the wearer behind the ears. However, due to the significant variation among individuals in the distance from the appropriate position of an eyeglass lens and the back of the ear, the traditional ear hook is frequently either too far back or too far forward of the appropriate position on the wearer's ear. This causes either a painful or irritating friction if the hook is too far forward, or a loose fit if too far back.

The prior attempts to improve the retention of eyewear about the wearer's head have also included the use of rubber or rubber-like plastic boots applied to the free ends of the temples for increasing the friction between the eyeglasses and the head, such as shown in Bates U.S. Pat. No. 3,684,356. The Bates device, however, appears somewhat clumsy and awkward and, therefore, detracts from the appearance of the eyewear. In addition, the Bates device is limited in that it may not be adjusted relative to the eyewear; that is, the closed end of the boot prevents forward adjustment to a more anterior point of contact between the temples and the head, while an unsupported length of boot extending beyond the earpiece is undesirable.

Another prior attempt to improve eyewear retention is disclosed in the Nelson patent (U.S. Pat. No. 2,561,402), which discloses use of relatively complicated fluid chambers at the interface of the free end of the temples and the head. Nelson uses the fluid chambers in an effort to evenly distribute pressure between the temple and the head. As the fluid chambers of Nelson are permanently affixed to the temple in a predetermined orientation, modification for specific individuals is unavailable. In addition, the fluid retained within the chambers adds an undesired weight to the eyewear. Further, even if the fluid chambers were removable, such removal would substantially alter the fit of the eyewear, rendering the eyewear substantially unwearable.

Notwithstanding the foregoing, there remains a need for providing a means of improving the compatibility of eyewear and the wearer so as to improve retention of the eyewear. Preferably, the eyewear retention means will enable one size to comfortably and securely fit a much larger population than can one size eyewear having the traditional ear hook.

A need also exists for a device which improves retention of eyewear without permanently altering the configuration of the eyewear. A further need exists for a retaining device which may be easily disengaged or recombined with the eyewear without drastically changing the functioning or the appearance of the eyewear. In addition to the functional requirements of the traction device, an aesthetic requirement exists so that the device may be employed as a portion of eye wear in either an unobtrusive or distinctive, but attractive, mode.

## SUMMARY OF THE INVENTION

There is provided in accordance with one aspect of the present invention an improved eyewear temple of the type for retaining a pair of eyeglasses on the head of the wearer, by extending from the eyeglass frame in a posterior, i.e., distal, direction over the top of the ears of the wearer. The improved eyeglass temple of the present invention permits the elimination of the traditional hook on the posterior end of traditional temples, and allows a single size set of eyewear temples to comfortably and securely fit on a broader cross section of anatomical variations.

The eyeglass temple comprises an elongate eyeglass temple body, having a first proximal end for attaching the temple to the frame of the eyeglasses, and a second end, distal from the first end, for engaging the head of the wearer. Optionally, the first end of the temple is adapted for securing directly to the lens, such as in a single lens eyeglass system. Preferably, the first end on the temple is provided with a means for releasably pivotably engaging the eyeglass lens or eyeglass frame.

A recessed seat is disposed on the elongate temple body, in between the first and second ends, the recessed seat having a smaller cross-sectional area than the cross-sectional area of the temple body adjacent to the seat. Preferably, the recessed seat comprises an annular recess having first and second shoulders at the first and second axial ends thereof. Preferably, the axial length of the annular recess is less than about one-half of the axial length of the temple, and most preferably, less than about one-third the axial length of the temple.

The eyeglass temple is preferably additionally provided with at least one tubular traction member disposed within the recessed seat. The traction member



EXHIBIT 4, PAGE 3 OF 7

preferably comprises an elastomeric material which enables radial expansion to fit over the distal end of the temple body, and relaxation back to provide a snug fit within the recess on the temple. The traction member is preferably made from an elastomeric material which exhibits improved retention properties when the material is wet, and, most preferably, the exterior surface of the traction member is provided with friction enhancing structures, such as annular ridges or other patterned textures.

There is provided in accordance with another aspect of the present invention, an improved eyeglass having at least one lens, and a frame for supporting the lens in front of the eyes of the wearer. The eyeglass is further provided with a first and a second temple produced in accordance with the present invention. Preferably, the distal end of the temple is substantially straight, so that the temple does not wrap around behind the ear of the wearer.

Further features and advantages of the present invention will become apparent from the detailed description of preferred embodiments which follow, when taken together with the appended figures and claims.

## BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a perspective view of eyewear in accordance with one embodiment of the present invention.

FIG. 2 is a side elevational view of a second embodiment of eyewear in accordance with the present invention, with the traction member removed.

FIG. 3 is a perspective view of a traction member in accordance with the present invention.

FIG. 4 is a cross-sectional view taken along line 4—4 of FIG. 1.

FIG. 5 is a perspective view showing an alternative embodiment of the traction member.

FIG. 6 is a cross-sectional view taken along line 6—6 of FIG. 5.

## DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENT

As used in the present application, "eyewear" is a general term intended to embrace optical devices containing corrective lenses for defects in vision or lenses for such special purposes as filters for absorbing or blocking portions of the electromagnetic spectrum, providing physical shields for the eyes or making available other physical or optical functions for protective or visual assisting purposes.

As shown in FIG. 1, eyewear 10 adapted to position a lens in a predetermined orientation relative to the eyes includes a frame 12, lens 14 and temples 20. Preferably, the lens 14 is joined to the frame 12 so as to position the lens 14 before the eyes. As shown in FIGS. 1, 2 and 6, the temples 20 may be pivotally affixed or joined to the frame 12. Although the temples 20 are shown in FIG. 1 as pivotally affixed to the frame 12, the temples 20 may be permanently attached in a predetermined orientation or selectively engageable with the frame 12 without circumventing the scope of the present invention. Alternatively, the frame 12 may be eliminated entirely by securing the temples 20 with or without temple hinges directly to the lens 14 by thermoplastic bonding, adhesives screws or other known fastening means which are suitable for the material of the lens and temples.

As is well known in the art, the frame 12 and temples 20 may be conveniently made of molded plastic or a variety of other materials. The lens 14 may take any of a number of configurations and may be formed of sheet plastic, molded plastic or glass as determined by the application of the lens.

Each temple 20 is defined by a proximal end 22 and a distal end 24 wherein the proximal end 22 is affixed either permanently or detachably to the frame 12. The permanent attachment of the temples to the frame 12 may be accomplished through molding or thermoplastic bonding. The detachable engagement of the temples 20 and the frame 12 is provided by the use of a snap fit or fasteners including screws or pins, as are known in the art.

Although the earstems shown in FIG. 1 are affixed to the frame 12, the earstem 20 may be attached directly to the lens 14. Preferably, the earstems 20 are hingeably attached to the frame 12 or lens 14 and most preferably, hingeably and removably attached, as well known in the art.

As shown in FIG. 1, in a typical hingeable connection, the frame 12 or lens 14 includes a hinge aperture (not illustrated) extending through a protruding flange 16. The earstem 20 includes a pair of parallel apertured flanges 18*a*, 18*b* spaced so as to receive the flange 16 of the frame 12 or lens 14 therebetween. The apertures in the earstem 20 are aligned with the apertures of the frame 12 or lens 14 and a pin is inserted so as to permit rotation of the frame 12 or lens 14 relative to the earstem 20, thereby providing a hingeable connection. In a typically readily detachable hinge, the aperture in the flange 16 of the frame 12 or lens 14 is replaced by an integral pin (not illustrated) which extends away from the flange 16 in opposite directions along the same axis as the aperture. The pinned flange 16 is inserted by deformation between the opposing flanges 18*a*, 18*b* and the integral pin snaps into the aperture on the flanges 18*a*, 18*b*, thereby providing a readily detachable hinge.

As shown in FIGS. 1 and 5, the distal end 24 may be curved so as to provide loops which are disposed behind the ears when the eyewear is worn. However, as the looped temples shown in FIGS. 1 and 5 may impinge upon the head in undesired locations when employed on heads of different sizes, the looped temples are not well suited to accommodate a wide variety of head sizes. Thus, the preferred embodiment shown in FIG. 2 includes a straight temple which, when used in conjunction with the present invention, provides more universally fitting eyewear and eliminates the traditional ear hook which can cause discomfort or distraction for many wearers.

As shown in FIG. 2, a recessed seat 30 is disposed intermediate of the proximal and distal ends 22, 24. As shown in FIG. 2, the seat 30 is preferably located adjacent the distal end 24 of the temple 20, so that the posterior shoulder 34 is substantially coincident with the distal end 24. However, as will be apparent, if it is desired to extend the temples in a posterior direction well beyond the ears, the distance between posterior shoulder 34 and distal end 24 can be proportionately increased to maintain seat 30 near the ear.

The recessed seat 30 is defined by posterior shoulder 34 and preferably an anterior shoulder 32, such that the anterior shoulder 32 is disposed between the posterior shoulder 34 and the proximal end 22. Preferably the cross-sectional dimension of the seat 30 between the anterior and posterior shoulders 32, 34 is smaller than the cross-sectional dimension of the adjacent temple 20.

Preferably, the posterior should 34 is a sufficient distance from the anterior shoulder 32 so that at least

one traction member 40 may be retained therebetween. However, the seat 30 may be configured so as to extend substantially the entire length of the temple or alternatively, may extend only a portion of the overall length of the temple. Typically, the seat extends less than about one-half or one-third the length of the temple and is disposed on the posterior portion of the temple.

Although the seat is shown as defined by an anterior shoulder 32 and a posterior shoulder 34, the present invention may be practiced with a seat 30 defined only by a posterior shoulder 34 for preventing unintended axial displacement of the traction member in the posterior direction.

When the seat 30 is defined by only the posterior shoulder 34, the cross-sectional area of the seat may taper from being substantially coincident with an anterior cross-sectional area of the temple to the reduced cross-sectional area at the posterior shoulder 34. The posterior shoulder thereby prevents unintentional axial displacement of the traction member in the posterior direction. Axial displacement of the traction member in the anterior direction is inhibited by the expanding cross-sectional area of the seat in a tapered embodiment, as the seat extends in the anterior direction, or simply by a friction fit in the absence of a taper or an anterior shoulder.

Preferably, the seat 30 is located so that upon operable engagement of the traction member 40 within the seat 30, the traction member 40 provides an interface between the eyewear and the head. That is, the traction member 40 contacts the head.

Referring to FIG. 3, an elongate tubular traction member 40 is shown. In the preferred embodiment, the traction member 40 is formed substantially in the shape of a hollow cylinder having an inner surface 42 of radius R1 and outer surface 44 of radius R2, wherein radius R1 is less than radius R2. Preferably, radius R1 is expandable to permit passage of the distal end 24 of the temple 20 through the interior of the traction member 40 without exceeding the elastic limits of deformation of the traction member 40.

As shown in FIG. 4, the traction member 40 is preferably comprised of a material having sufficient elasticity that the inner surface 42 of the traction member 40 snugly contacts the surface of a seat 30 having an oblong or rectangular cross-section with a cross-sectional area greater than that of R1 in the unexpanded state. Referring to FIG. 6, the inner surface 42 will also preferably conform snugly to the surface of a seat 30 having a substantially circular cross-section.

Other embodiments of the traction member 40 may be employed, such as one having an open rectangular or triangular cross-sectional configuration having a bias so that the open legs of the triangle or rectangle are biased towards one another to tend to form a tubular element. Thus, traction devices can take the form of an elongate body which is split axially along one wall so that it does not form a complete tube. The bias should be sufficient so that the opposing inner surfaces 42 of the traction member 40 cooperatively engage the periphery of the recessed seat 30.

The traction member 40 may be formed by molding or extruding processes, as well known in the art. Preferably, the outer surface 42 is configured to enhance the coefficient of static friction between the eyewear and the head. The outer surface 44 may be formed to exhibit a variety of static friction coefficient enhancing configurations, such as a grid, waffle, or ribbed pattern (not shown). Typically, the outer surface 42 produced by extrusion will exhibit axially oriented patterns, while molded outer surfaces may exhibit axially and/or radially oriented patterns.

As discussed infra, the traction member 40 is preferably formed of an elastomeric material exhibiting sufficient flexibility or elasticity to allow the traction member 40 to expand while being slipped over the temple distal end 24 and to contract back within seat 30 after passing over the distal end.

In a particularly preferred embodiment, the traction member 40 is formed of a relatively soft elastomeric material having a coefficient of sliding friction that increases when the material is wetted. Such a material, sometimes referred to as hydrophilic, tends to enhance retention of the traction member 40 in position on the wearer's head as the wearer perspires or encounters moisture, as during skiing. One suitable material which can be readily molded by conventional techniques is marketed under the name KROTON G TM, a product of the Shell Oil Company.

The traction member 40 may comprise a resilient sponge-like elastomeric material, having a relatively high porosity, as shown in FIGS. 3 and 4. Alternatively, as shown in FIG. 6, the traction member 40 may comprise a substantially solid, i.e., fine or no porosity, yet flexible material. In addition, the traction member 40 may be made of materials having different densities, thereby providing traction members 40 having different weights, which may be employed to counterbalance lenses of differing weights, so as to distribute the weight of the eyewear 10 more evenly about the head.

The length of the traction member 40 is preferably no greater than and most preferably substantially equal to the distance between the anterior and posterior shoulders 32, 34. Although the traction member 40 is illustrated as extending roughly one-third or one-half the overall length of the temple, the traction members 40 within the present invention can extend anywhere from substantially the entire length of the temple 20 to only a relatively small portion thereof, as depending upon the configuration of the seat 30. Alternatively, a plurality of traction members 40 may be axially aligned within the seat 30. The traction members 40 may be selected so that a combined length of the members 40 substantially equals the distance between the anterior and the posterior shoulders 32, 34 or alternatively, the combined axial length of the members 40 may be such that an axial space separates adjacent traction members 40 within the seat.

In assembling the present invention, the traction member 40 is engaged with a temple 20 by passing the distal end 24 of the temple 20 through the tubular passageway within traction member 40. Alternatively, the temple 20 may be detached from the frame 12 or lens 14 and the proximal end 22 may be passed through the tubular passageway of the traction member 40. Therefore, the preferred construction of the traction member 40 which elastically passes over the distal end may be obviated. The traction member 40 is then moved along the temple 20 until the inner surface 42 engages the seat 30. In an embodiment in which the seat 30 has a length substantially equal to the length of the traction member 40, as the traction member 40 is received within the seat 30, further unintended motion along the temple 20 is prevented by engagement of the anterior and posterior shoulders 32, 34 with the traction member 40.

Alternatively, the seat 30 may have a sufficient axial length so as to retain a plurality of traction members 40 between the anterior and posterior shoulders 32, 34. The use of multiple traction members 40 allows for accommodating fashion considerations as well as high retaining forces for active uses, such as volleyball or basketball. Upon engagement of the traction member 40 within the seat 30, the outer surface 44 of the traction member 40 may be disposed outside of the periphery of the temple 20, as shown in FIG. 1 or, alternatively, may be substantially flush with the periphery 38 of the adjacent temple 20, as shown in FIG. 5. Traction members are preferably provided having a variety of wall thicknesses, i.e., the difference between R1 and R2. Thus, the wearer can select a flush fitting traction member as illustrated in FIG. 5 or a radially enlarged traction member as illustrated in FIG. 1, depending upon that wearer's perception of the need for enhanced traction or sleek appearance.

As the majority of the length of the temple 20 in the preferred embodiment is dominated by the periphery of the temple 20 rather than the seat 30, if the traction members 40 are removed from the temples 20, the fitting of the eyewear 10 will not be substantially denigrated. However, the length of the traction member 40, when engaged in the seat 30, provides a sufficient contact area to increase the resistance to movement of the eyewear 10 relative to the head.

This present invention has been described in detail in connection with the preferred embodiments, but these are examples only and the present invention is not restricted thereto. It will be easily understood by those skilled in the art that other variations and modifications can be easily made within the scope of this invention, which is defined by the following claims.

It is claimed:

1. Improved eyewear, comprising:

at least one temple piece having a recessed seat along a length thereof such that the seat defines a periphery which is smaller than the periphery of the adjacent temple portion, said seat having an axial length of less than about one-half the axial length of the temple; and

at least one substantially tubular traction member disposed within the recessed seat having an inner surface, an outer surface, and a central passageway running axially therethrough, said inner surface removably engaging the periphery of the seat, and said outer surface adapted to provide a contact surface with the head of the wearer.

2. Improved eyewear, comprising:

a frame;

at least one temple having proximal and distal ends and being joined to the frame at the proximal end thereof, having a recessed seat interposed between said proximal and distal ends, said seat having a smaller cross-sectional area than the cross-sectional area of said temple portion adjacent said seat, and said seat having an axial length of less than about one-half of the axial length of the temple; and

a substantially tubular elastomeric traction member having an inner surface and an outer surface, such that the inner surface is adapted to circumferentially contact the temple, and the outer surface is adapted to engage the head of a wearer, wherein the traction member is disposed in the recessed seat region on the temple.

3. An improved eyewear temple for retaining eyeglasses on the head of the wearer and reducing abrasion caused by movement of said eyewear, comprising:

an elongate eyewear temple body;

a first end on the temple for attaching the temple to the frame of the eyeglasses;

a second end on the temple, distal said first end, for engaging the head of the wearer; and

a recessed seat interposed between said first and second ends having a smaller cross-sectional area than that of said temple portion adjacent said seat, said seat being separated from the remainder of said temple by first and second shoulders, such that the first axial length of the recessed seat between the first and second shoulders is less than about one-half of the axial length of the temple, said recessed seat being situated toward the distal end of the temple such that at least one substantially tubular traction member removably disposed within the recessed seat can engage the head of the wearer.

4. An eyewear temple as in claim 3, wherein at least one substantially tubular traction member is disposed within the recessed seat between the first and second shoulders, said member having an inner surface, an outer surface, and a central passageway running axially therethrough, said inner surface removably engaging the periphery of the seat, and said outer surface adapted to provide a contact surface with the head of the wearer.

5. An eyewear temple as in claim 4, wherein the tubular traction member comprises a resilient elastomeric material.

6. An improved eyewear temple as in claim 5, wherein said elastomeric material exhibits a coefficient of sliding friction that increases when the material is wetted.

7. An eyewear temple as in claim 5, wherein the thickness of the traction member is such that the outer surface of the traction member is substantially flush with the periphery of the adjacent portion of the temple.

8. An eyewear temple as in claim 7, wherein the outer cross-sectional shape of the traction member approximates the outer cross-sectional shape of the adjacent portion of the temple.

9. An eyewear temple as in claim 5, wherein the traction member extends radially outward beyond the surface of the adjacent portion of the temple.

10. An eyewear temple as in claim 5, wherein at least one tubular traction member disposed within the recessed seat extends substantially the entire distance between said first and second shoulders of the temple.

11. An eyewear temple as in claim 5, wherein the traction member is removable and comprises a hollow, elastomeric member adapted to allow elastic radial expansion for sliding over the distal end of said temples and into engagement with said recessed seat.

12. An eyewear temple as in claim 3, wherein the shoulders extend substantially perpendicularly from the seat.

13. An eyewear temple as in claim 3, wherein the recessed seat consists of a tapering that extends axially and radially from the distal end of the recessed seat to the proximal end, wherein the cross-sectional area of the seat tapers from the smaller periphery at the distal end to being substantially coincident with the cross-sectional area of the temple at the proximal end of the recessed seat.

 

14. An eyewear temple as in claim 3, wherein the axial length of the recessed seat extends no more than about one-third the length of the temple.

15. An eyewear temple as in claim 3 further comprising an attachment means on the first end thereof for pivotably removably attaching the temple to an eyeglass frame.

16. An improved eyewear temple for retaining eyeglasses on the head of the wearer and reducing abrasion caused by movement of said eyewear, comprising:

an elongate eyewear temple body, wherein the body is substantially linear through the axial length of the temple;

a first end on the temple for attaching the temple to the frame of the eyeglasses;

a second end on the temple, distal said first end, for engaging the head of the wearer;

a recessed seat interposed between said first and second ends having a smaller cross-sectional area than that of said temple portion adjacent said seat, said seat being separated from the remainder of said temple by first and second shoulders; and

at least one tubular traction member disposed within the recessed seat.

17. An eyewear temple as in claim 16, wherein at least one substantially tubular traction member is disposed within the recessed seat between the first and second shoulders, said member having in inner surface, an outer surface, and a central passageway running axially therethrough, said inner surface removably engaging the periphery of the seat, and said outer surface adapted to provide a contact surface with the head of the wearer.

18. An eyewear temple as in claim 17, wherein the tubular traction member comprises a resilient elastomeric material.

19. An improved eyewear temple as in claim 18, wherein said elastomeric material exhibits a coefficient of sliding friction that increases when the material is wetted.

20. An eyewear temple as in claim 18, wherein the thickness of the traction member is such that the outer surface of the traction member is substantially flush with the periphery of the adjacent portion of the temple.

21. An eyewear temple as in claim 20, wherein the outer cross-sectional shape of the traction member approximates the outer cross-sectional shape of the adjacent portion of the temple.

22. An eyewear temple as in claim 18, wherein the traction member extends radially outward beyond the surface of the adjacent portion of the temple.

23. An eyewear temple as in claim 16, wherein the shoulders extend substantially perpendicularly from the seat.

24. An eyewear temple as in claim 16, wherein the recessed seat consists of a tapering that extends axially and radially from the distal end of the recessed seat to the proximal end, wherein the cross-sectional area of the seat tapers from the smaller periphery at the distal end to being substantially coincident with the cross-sectional area of the temple at the proximal end of the recessed seat.

25. An eyewear temple as in claim 16, wherein the axial length of the recessed seat extends no more than about one-third the length of the temple.

26. An eyewear temple as in claim 16, wherein the axial length of the recessed seat extends no more than about one-half the length of the temple.

27. An eyewear temple as in claim 16, wherein at least one tubular traction member disposed within the recessed seat extends substantially the entire distance between said first and second shoulders of the temple.

28. An eyewear temple as in claim 16, wherein the traction member is removable and comprises a hollow, elastomeric member adapted to allow elastic radial expansion for sliding over the distal end of said temples and into engagement with said recessed seat.

29. An eyewear temple as in claim 16, further comprising an attachment means on the first end thereof for pivotably removably attaching the temple to an eyeglass frame.

30. Improved eyewear, comprising:

at least one temple piece being substantially linear throughout the axial length of the temple and having a recessed seat along a length thereof such that the seat defines a periphery which is smaller than the periphery of the adjacent temple portion; and

at least one substantially tubular traction member disposed within the recessed seat having an inner surface, an outer surface, and a central passageway running axially therethrough said inner surface removably engaging the periphery of the seat, and said outer surface adapted to provide a contact surface with the head of the wearer.

31. Improved eyewear, comprising:

a frame;

at least one temple having proximal and distal ends and being joined to the frame at the proximal end thereof, said temple being substantially linear throughout the axial length of the temple, said temple having a recessed seat interposed between said proximal and distal ends, said seat having a smaller cross-sectional area than that of said temple portion adjacent said seat; and

a substantially tubular elastomeric traction member having an inner surface and an outer surface, such that the inner surface is adapted to circumferentially contact the temple, and the outer surface is adapted to engage the head of a wearer, wherein the traction member is disposed in the recessed seat region on the temple.

32. Improved eyewear having a lens, a frame supporting said lens for positioning the lens before the eyes of a wearer, and first and second temples for securing said eyewear to the head of the wearer, said temples having a proximal end joined to said frame and a distal end spaced from said proximal end, the improvement comprising:

said first and second temples being substantially linear throughout the axial length of the temple member, said temples having disposed between said proximal and distal ends a radially recessed seat having a smaller cross-sectional area than that of said temple portion adjacent said seat; and

at least one traction member releasably secured on said first and second temples within the seat, whereby said traction member frictionally engages the wearer's head.

* * * * *

US00D420036S

# United States Patent [19]

Yee et al.

[11] Patent Number: Des. 420,036

[45] Date of Patent: ** Feb. 1, 2000

[54] EYEGLASS COMPONENTS

[75] Inventors: Peter Yee, Irvine, Calif.; Koji Nagayoshi, Sabae, Japan

[73] Assignee: Oakley, Inc., Foothill Ranch, Calif.

[**] Term: 14 Years

[21] Appl. No.: 29/087,188

[22] Filed: Apr. 28, 1998

[51] LOC (7) Cl. ........ 16-06

[52] U.S. Cl. ........ D16/326

[58] Field of Search ........ D16/101, 300–330; D29/109, 110; 351/41, 44, 51, 52, 158; 2/447, 448

[56] References Cited

U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| D. 116,259 | 8/1939 | Cook . |
| D. 145,288 | 7/1946 | Di Cicco . |
| D. 169,724 | 6/1953 | Bauer . |
| D. 187,299 | 2/1960 | Behr . |
| D. 198,719 | 7/1964 | McCulloch . |
| D. 199,150 | 9/1964 | Carmichael . |
| D. 202,129 | 8/1965 | Marchi . |
| D. 202,130 | 8/1965 | Mitchell . |
| D. 204,496 | 4/1966 | McCulloch . |
| D. 210,625 | 3/1968 | Pollak . |
| D. 268,683 | 4/1983 | Tenny . |
| D. 320,402 | 10/1991 | Jannard . |
| D. 323,516 | 1/1992 | Mikitarian . |
| D. 339,816 | 9/1993 | Jackson . |
| D. 347,014 | 5/1994 | Amette . |

(List continued on next page.)

FOREIGN PATENT DOCUMENTS

0496292A1 1/1992 European Pat. Off. .

OTHER PUBLICATIONS

Accessories, Shades of Success, Oct. 1986.
Alpina.
Wilh. Stoffler—Preisliste 1996.

(List continued on next page.)

*Primary Examiner*—Raphael Barkai
*Attorney, Agent, or Firm*—Knobbe, Martens, Olson & Bear, LLP

[57] CLAIM

The ornamental design for eyeglass components, as shown and described.

## DESCRIPTION

FIG. 1 is a perspective view of eyeglass components showing our new design;
FIG. 2 is a front elevational view thereof;
FIG. 3 is a rear elevational view thereof;
FIG. 4 is a left side elevational view thereof, the right side elevational view being a mirror image thereof;
FIG. 5 is top plan view thereof;
FIG. 6 is a bottom plan view thereof;
FIG. 7 is a perspective view of a modified embodiment of the design shown in FIGS. 1–6;
FIG. 8 is a front elevational view thereof;
FIG. 9 is a rear elevational view thereof;
FIG. 10 is a left side elevational view thereof, the right side elevational view being a mirror image thereof;
FIG. 11 is top plan view thereof;
FIG. 12 is a bottom plan view thereof;
FIG. 13 is a perspective view of a second modified embodiment of the design shown in FIGS. 1–6;
FIG. 14 is a front elevational view thereof;
FIG. 15 is a rear elevational view thereof;
FIG. 16 is a left side elevational view thereof, the right side elevational view being a mirror image thereof;
FIG. 17 is top plan view thereof;
FIG. 18 is a bottom plan view thereof;
FIG. 19 is a perspective view of a third modified embodiment of the design shown in FIGS. 1–6;
FIG. 20 is a front elevational view thereof;
FIG. 21 is a rear elevational view thereof;
FIG. 22 is a left side elevational view thereof, the right side elevational view being a mirror image thereof;
FIG. 23 is top plan view thereof; and
FIG. 24 is a bottom plan view thereof.
The broken lines shown in FIGS. 1, 7, 13 and 19 are for illustrative purposes only and forms no part of the claimed design.

1 Claim, 12 Drawing Sheets



U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| D. 371,152 | 6/1996 | Simioni . | |
| D. 371,383 | 7/1996 | Goldman . | |
| D. 372,929 | 8/1996 | Conway . | |
| D. 373,781 | 9/1996 | Simioni . | |
| D. 376,381 | 12/1996 | Jannard et al. | D16/326 |
| D. 378,375 | 3/1997 | Tsai . | |
| D. 383,149 | 9/1997 | Simioni . | |
| D. 388,816 | 1/1998 | Jannard et al. | D16/326 |
| D. 392,662 | 3/1998 | Jannard et al. | D16/326 |
| D. 396,874 | 8/1998 | Simioni | D16/326 |
| D. 397,352 | 8/1998 | Simioni | D16/327 |
| D. 397,714 | 9/1998 | Simioni | D16/327 |
| D. 399,240 | 10/1998 | Jannard et al. | D16/326 |
| D. 399,865 | 10/1998 | Jannard et al. | D16/326 |
| 4,741,611 | 5/1988 | Burns . | |
| 4,983,029 | 1/1991 | Sato . | |
| 4,989,274 | 2/1991 | Patelski, III . | |
| 5,035,498 | 7/1991 | Robert . | |

OTHER PUBLICATIONS

The Walking Office "Spectacles Publ. Boxes" Domus—Oct. 1985.
Wired 909 by Avalon Eyewear.
Accessories Magazine—Apr. 1991.
Solex Quality Optics—Skiing Sep. 1992.
Loubsol Catalogue.
Loubsol Catalogue—Jun. issue.
Loubsol Catalogue Tendances Solaires 1997.
Loris Azzaro—Parris.
B.B. Sol.
CEBE.
B.B. Sol Catalogue.
B.B. Sol Catalogue—1962.
B.B. Sol Sovirel.
B.B. Sol Sovirel—1971.
Les Lunettes B.B. Sol "Sovirel".
B.B. Sol Mode 73.
B. B. Sol 1974.
B.B. Sol 1975.
B.B. Sol 1976.
B.B. Sol 1977.
De b.b. Sol 1978.
B.B. Sol 1979.
B.B. Sol 1980.
B.B. Sol 1982.
B.B. Sol 1983.
B.B. Sol 1984.
b.b. Sol 1986.
B.B. Sol 1988—Lunettes de Soleil.
B.B. Sol 1989—Lunettes de Soleil.
B.B. Sol 1990—Lunettes de Soleil.
B.B. Sol 1991—Lunettes De Soleil.
B.B. Sol 1993—Protege Vos Yeux.
Unknown brand.
Sunglasses—Accessories—Dec. 1986.
Berthet—Bondet—1995 Catalogue.
Berthet—Bondet—Protege Vos Yeux—1994.
Trade Winds—Nov. 1994.
Sun & Sport Eyewear—Harley-Davidson Eyewear—Fall 1996.
Bolle Eyeshields—Protective Eyewear.
Domus "Spectacles" Publication Boxes—Oct. 1985.
Spectacles Publication Boxes—Accessories—Oct. 1986.
Sun and Sport Eyewear—Bolle.
Sunglass Hut International—Introducing Harley DAvidson Sunwear—Summer 1996.
Sunglass Hut International—Spring Sport 1996.
Sunglass Hut International—Revo—through Dec. 31st.
Accessories Magazine—Apr. 1991.
Cover Girl.
Sun and Sport Eyewear—Bolle—Summer 1996.
Fraves—Adrienne Vittadini—Winter 1997.
Fraves—Harley-Davidson Eyewear—Summer 1996.
Sunglass Hut International—Introducing Harley Davidson Sunwear—Summer Fashion 1996.



FIG. 1



FIG. 2



FIG. 3



FIG. 4



FIG.5



FIG.6



FIG. 7



*FIG. 8*



*FIG. 9*



*FIG. 10*



FIG. 11



FIG. 12



FIG. 13



FIG. 14



FIG. 15



FIG. 16



FIG. 17



FIG. 18



FIG. 19



FIG.20



FIG.21



FIG.22



FIG.23



FIG.24

US00D369375S

# United States Patent [19]

**Jannard et al.**

[11] **Patent Number: Des. 369,375**

[45] **Date of Patent: **Apr. 30, 1996**

[54] **EYEGLASSES**

[75] Inventors: **James H. Jannard**, Eastsound, Wash.; **Peter Yee**, Huntington Beach; **M. Neil Houston**, Foothill Ranch, both of Calif.

[73] Assignee: **Oakley, Inc.**, Irvine, Calif.

[**] Term: **14 Years**

[21] Appl. No.: **30,825**

[22] Filed: **Nov. 9, 1994**

[52] U.S. Cl. .................................................. **D16/326**

[58] **Field of Search** .................................. D16/300, 306, D16/309–311, 315–317, 323–330, 340, 341; 351/44, 50, 51, 103–110, 158

[56] **References Cited**

U.S. PATENT DOCUMENTS



| | | | |
|---|---|---|---|
| D. 167,704 | 9/1952 | McCardell | D16/326 |
| D. 193,028 | 6/1962 | Petitto | D16/326 |
| D. 196,000 | 8/1963 | McNeill | D16/315 |
| D. 204,418 | 4/1966 | Ramp | D16/329 |
| D. 205,419 | 8/1966 | Griss | D16/326 |
| D. 206,353 | 11/1966 | Bloch | D16/326 |
| D. 209,095 | 10/1967 | Ramp | D16/328 |
| D. 347,014 | 5/1994 | Arneuc | D16/326 |



*Primary Examiner*—Ted Shooman
*Assistant Examiner*—R. Barkai
*Attorney, Agent, or Firm*—Knobbe, Martens, Olson & Bear

[57] **CLAIM**

The ornamental design for eyeglasses, as shown and described.

**DESCRIPTION**

FIG. 1 is a front perspective view of the eyeglasses of the present invention;
FIG. 2 is a front elevational view of the eyeglasses of FIG. 1;
FIG. 3 is a rear elevational view of the eyeglasses of FIG. 1;
FIG. 4 is a left side elevational view of the eyeglasses of FIG. 1, the right side elevational view being a mirror image thereof;
FIG. 5 is a top plan view of the eyeglasses of FIG. 1; and,
FIG. 6 is a bottom plan view of the eyeglasses of FIG. 1.

**1 Claim, 3 Drawing Sheets**





Fig. 1

Fig. 2



Fig. 3



Fig. 4





Fig. 6



Fig. 5

US00D408048S

# United States Patent [19]

Jannard et al.

[11] Patent Number: Des. 408,048

[45] Date of Patent: **Apr. 13, 1999

[54] EYEWEAR

[75] Inventors: James H. Jannard, Eastsound, Wash.; Peter Yee, Huntington Beach; M. Neil Houston, Foothill Ranch, both of Calif.

[73] Assignee: Oakley, Inc., Foothill Ranch, Calif.

[**] Term: 14 Years

[21] Appl. No.: 29/053,675

[22] Filed: Apr. 29, 1996

**Related U.S. Application Data**

[62] Division of application No. 29/030,825, Nov. 9, 1994, Pat. No. Des. 369,375.

[51] LOC (6) Cl. ........ 16-06
[52] U.S. Cl. ........ D16/326
[58] Field of Search ........ D16/300, 101, D16/301–330; 351/41, 44, 51, 52, 158; 2/447, 448

[56] **References Cited**

U.S. PATENT DOCUMENTS


| | | | |
|---|---|---|---|
| D. 145,288 | 7/1946 | Di Cicco . | |
| D. 167,704 | 9/1952 | McCardel | D16/326 |
| D. 193,028 | 6/1962 | Petitto | D16/326 |
| D. 196,000 | 8/1963 | McNeill | D16/315 |
| D. 199,150 | 9/1964 | Carmichael et al. . | |
| D. 200,391 | 2/1965 | Bamelli . | |
| D. 202,129 | 5/1965 | Marchi . | |
| D. 204,418 | 4/1966 | Ramp | D16/329 |
| D. 205,419 | 8/1966 | Griss | D16/326 |
| D. 206,353 | 11/1966 | Bloch | D16/326 |
| D. 209,095 | 10/1967 | Ramp | D16/328 |
| D. 268,683 | 4/1983 | Teany . | |
| D. 320,402 | 10/1991 | Jannard et al. . | |
| D. 347,014 | 5/1994 | Arnette | D16/326 |
| D. 358,600 | 5/1995 | Jannard . | |
| D. 365,591 | 12/1995 | Jannard et al. . | |
| D. 369,375 | 4/1996 | Jannard et al. . | |
| 836,796 | 11/1906 | Anderson . | |
| 1,338,880 | 5/1920 | Stevens . | |
| 2,511,329 | 6/1950 | Craig . | |
| 3,526,449 | 9/1970 | Bolle et al. . | |
| 3,531,189 | 9/1970 | Petito . | |
| 3,689,136 | 9/1972 | Atamian . | |

FOREIGN PATENT DOCUMENTS

PCTUS9107761 10/1991 WIPO .

OTHER PUBLICATIONS

*American Bicyclist & Motorcyclist*, p. 41, Mar. 1988.


*Primary Examiner*—Raphael Barkai
*Attorney, Agent, or Firm*—Knobbe, Martens, Olson & Bear, LLP

[57] **CLAIM**

The ornamental design for eyewear, as shown and described.

**DESCRIPTION**

FIG. 1 is a front perspective view of the eyewear of the present invention;
FIG. 2 is a front elevational view thereof;
FIG. 3 is a rear elevational view thereof;
FIG. 4 is a left side elevational view thereof, the right side elevational view being a mirror image thereof;
FIG. 5 is a top plan view thereof; and,
FIG. 6 is a bottom plan view thereof.
The broken line showing of the eyewear temple in FIG. 1 is for illustrative purposes only and forms no part of the claimed design.

**1 Claim, 3 Drawing Sheets**



EXHIBIT 9, Page 1 of 4



*Fig. 1*

*Fig. 2*



*Fig. 3*



*Fig. 4*



*Fig. 5*



*Fig. 6*



US00D445443S

(12) **United States Design Patent** (10) **Patent No.: US D445,443 S**
**Jannard et al.** (45) **Date of Patent: ** Jul. 24, 2001**

(54) **EYEGLASS FRONT**

(75) Inventors: **James H. Jannard**, Spieden Island; **Lek Thixton**, Eastsound, both of WA (US); **Peter Yee**, Irvine, CA (US)

(73) Assignee: **Oakley, Inc.**, Foothill Ranch, CA (US)

(**) Term: **14 Years**

(21) Appl. No.: **29/133,945**

(22) Filed: **Dec. 11, 2000**

(51) **LOC (7) Cl.** .................................................. **16-06**
(52) **U.S. Cl.** .................................................. **D16/326**
(58) **Field of Search** ........................ D16/101, 300–330; 351/41, 44, 51, 52, 158; 2/447, 448

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| D. 116,259 | 8/1939 | Cook . |
| D. 167,704 | 5/1952 | McCardell . |
| D. 187,299 | 2/1960 | Behr . |
| D. 189,436 | 12/1960 | Carmichael . |
| D. 192,884 | 5/1962 | Petitto . |
| D. 193,028 | 6/1962 | Petitto . |
| D. 202,129 | 8/1965 | Marchi . |
| D. 204,418 | 4/1966 | Ramp . |
| D. 204,812 | 5/1966 | Shindler . |
| D. 205,419 | 8/1966 | Griss . |
| D. 209,095 | 10/1967 | Ramp . |
| D. 214,292 | 5/1969 | Mitchell . |
| D. 339,816 | 9/1993 | Jackson . |
| D. 347,014 | 5/1994 | Arnette . |
| D. 362,260 | 9/1995 | Lin . |
| D. 363,504 | 10/1995 | Arnette . |
| D. 366,667 | 1/1996 | Arnette . |
| D. 366,892 | 2/1996 | Arnette . |
| D. 368,732 | 4/1996 | Lei . |
| D. 369,375 | 4/1996 | Jannard et al. . |
| D. 372,726 | 8/1996 | Simioni . |
| D. 376,810 | 12/1996 | Ohie . |
| D. 378,375 | 3/1997 | Tsai . |
| D. 378,376 | 3/1997 | Tsai . |
| D. 380,766 | 7/1997 | Simioni . |
| D. 384,686 | 10/1997 | Jannard et al. . |
| D. 385,291 | 10/1997 | Jannard et al. . |
| D. 389,504 | 1/1998 | Simioni . |
| D. 390,589 | 2/1998 | Simioni . |
| D. 391,596 | 3/1998 | Simioni . |
| D. 392,306 | 3/1998 | Arnette . |
| D. 392,307 | 3/1998 | Wilson . |
| D. 392,308 | 3/1998 | Simioni . |
| D. 398,022 | 9/1998 | Jannard et al. . |
| D. 399,239 | 10/1998 | Jannard et al. . |
| D. 400,229 | 10/1998 | Arnette . |
| D. 400,230 | 10/1998 | Arnette . |
| D. 406,858 | 3/1999 | Arnette . |

(List continued on next page.)

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| 1126329 | 11/1956 | (FR) . |
| WO 92/07293 | 4/1992 | (WO) . |

OTHER PUBLICATIONS

Rudy Project, "Noosa", printed on Dec. 19, 2000, from web site, "http://extreme-eyewear.com/Rudy/sunglasses/noosa.htm", published by Rudy Project, Treviso, Italy.

(List continued on next page.)

*Primary Examiner*—Raphael Barkai
(74) *Attorney, Agent, or Firm*—Gregory Nelson

(57) **CLAIM**

The ornamental design for an eyeglass front, as shown and described.

**DESCRIPTION**

FIG. 1 is a front perspective view of the front of the present invention;
FIG. 2 is a right-side elevational view thereof;
FIG. 3 is a left-side elevational view thereof;
FIG. 4 is a front elevational view thereof;
FIG. 5 is a rear elevational view thereof;
FIG. 6 is a top plan view thereof; and,
FIG. 7 is a bottom plan view thereof.
The broken lines shown in FIGS. 1, 6 and 7 are for illustrative purposes only and form no part of the claimed design.

**1 Claim, 5 Drawing Sheets**



U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| D. 408,048 | 4/1999 | Jannard et al. . |
| D. 410,667 | 6/1999 | Arnette . |
| D. 414,796 | 10/1999 | Arnette . |
| D. 415,188 | 10/1999 | Jannard et al. . |
| D. 415,515 | 10/1999 | Arnette et al. . |
| D. 422,010 | 3/2000 | Arnette . |
| D. 425,542 | 5/2000 | Arnette . |
| D. 428,621 | 7/2000 | Arnette . |
| 836,796 | 11/1906 | Anderson . |
| 3,517,415 | 6/1970 | McGrath et al. . |
| 3,526,449 | 9/1970 | Bolle et al. . |
| 3,531,189 | 9/1970 | Petito . |
| 3,689,136 | 9/1972 | Atamian . |
| 5,428,411 | 6/1995 | Kopfer . |
| 5,541,674 | 7/1996 | Jannard . |

OTHER PUBLICATIONS

Asia Pacific Trading Co., Inc., "Asia Pacific 1999–2000", p. 3 (model M243SD) on first row), p. 31 (model 98409SD on sixth row), p. 32 (model 7466 on the eighth row), p. 34 (model P90052PM on the third row), and p. 51 (model PC97208PM on the eighth row), unkown publisher and publishing date.

Asia Pacific Trading Co., Inc., "Asia Pacific 2000 Supplement", p. 13 (models PC014PM and PC016SD), and p. 20 (bottom 2 rows), unknown publisher and publishing date.

Sunglass Hut International, "Spring Sport 1996", p. stamped G00303, unknown publisher and publishing date.

Macy's Catalog, p. 23, Mar. 14, 1997.*

Macy's Catalog, p. 26, Jul. 1997.*

* cited by examiner



Fig. 1



Fig. 2



Fig. 3



Fig. 4



Fig. 5



Fig. 6



Fig. 7

US00D376381S

# United States Patent [19]

Jannard et al.

[11] Patent Number: Des. 376,381

[45] Date of Patent: **Dec. 10, 1996

[54] PAIR OF SPECTACLES WITHOUT EARSTEMS

[75] Inventors: James H. Jannard, Eastsound, Wash.; Hirofumi Nakano, Fukui, Japan

[73] Assignee: Oakley, Inc., Irvine, Calif.

[**] Term: 14 Years

[21] Appl. No.: 30,568

[22] Filed: Nov. 2, 1994

[52] U.S. Cl. .......................... D16/326; D16/330

[58] Field of Search .......................... D16/304, 306, D16/307, 309, 310, 312, 314, 322-330, 332, 333, 335, 900; 351/44, 47, 51, 57, 58, 59, 158

[56] References Cited

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| D. 214,292 | 5/1969 | Mitchell | D16/326 |
| D. 228,026 | 7/1973 | Shindler | D16/324 |

OTHER PUBLICATIONS

Vogue, May 1992 p. 301.
Optometric Weekly Jun. 13, 1994. p. 23.
Optometric Weekly Jul. 5, 1973 p. 25.

*Primary Examiner*—Raphael Barkai
*Attorney, Agent, or Firm*—Knobbe, Martens, Olson & Bear

[57] CLAIM

The ornamental design for a pair of spectacles without earstems, as shown and described.

DESCRIPTION

FIG. 1 is a front perspective view of a pair of spectacles without earstems showing our new design, the broken line showing of the earstems is for illustrative purposes only and forms no part of the claimed design;

FIG. 2 is a front elevational view thereof;

FIG. 3 is a rear elevational view thereof;

FIG. 4 is a left-side elevational view thereof, the right-side elevational view being a mirror image thereof;

FIG. 5 is a top plan view thereof; and,

FIG. 6 is a bottom plan view thereof.

1 Claim, 3 Drawing Sheets





EXHIBIT 9, PAGE 1 OF 4



FIG. 1



FIG. 2



FIG. 3



FIG. 4



FIG. 5



FIG. 6

US00D423548S

# United States Patent [19]

Yee et al.

[11] Patent Number: Des. 423,548

[45] Date of Patent: ** Apr. 25, 2000

[54] EYEGLASSES

[75] Inventors: Peter Yee, Irvine, Calif.; James H. Jannard, Eastsound, Wash.

[73] Assignee: Oakley, Inc., Foothill Ranch, Calif.

[**] Term: 14 Years

[21] Appl. No.: 29/099,732

[22] Filed: Jan. 26, 1999

Related U.S. Application Data

[62] Division of application No. 29/084,911, Mar. 12, 1998, Pat. No. Des. 404,754.

[51] LOC (6) Cl. ........ 16-06
[52] U.S. Cl. ........ D16/326
[58] Field of Search ........ D16/101, 300-330, D16/335, 338; 351/41, 44, 51, 52, 111, 158; 2/447, 448

[56] References Cited

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| D. 116,259 | 4/1939 | Cook . | |
| D. 167,704 | 9/1952 | McCardell . | |
| D. 196,000 | 8/1963 | Mc Neill et al. . | |
| D. 202,130 | 8/1965 | Mitchell . | |
| D. 204,418 | 4/1966 | Ramp . | |
| D. 205,419 | 8/1966 | Griss . | |
| D. 206,353 | 11/1966 | Bloch . | |
| D. 347,014 | 5/1994 | Arnette . | |
| D. 363,504 | 10/1995 | Arnette | D16/326 |
| D. 369,375 | 4/1996 | Jannard et al. . | |
| D. 371,383 | 7/1996 | Goldman . | |
| D. 376,810 | 12/1996 | Ohle . | |
| D. 380,766 | 7/1997 | Simioni . | |
| D. 384,686 | 10/1997 | Jannard et al. . | |
| D. 385,291 | 10/1997 | Jannard et al. . | |
| D. 389,504 | 1/1998 | Simioni . | |
| D. 392,307 | 3/1998 | Wilson | D16/326 |
| D. 397,350 | 8/1998 | Jannard | D16/326 |
| D. 399,239 | 10/1998 | Jannard | D16/326 |
| 1,184,347 | 3/1916 | Yau . | |
| 2,442,483 | 6/1948 | Blasi . | |
| 3,156,756 | 11/1964 | Seaver . | |
| 3,476,466 | 11/1969 | Hopkins . | |
| 3,684,356 | 8/1972 | Bates . | |
| 5,541,674 | 7/1996 | Jannard . | |

OTHER PUBLICATIONS

Ski Magazine, Aug. 15, 1994.
Macy's Catalog, Jul. 1997.
Accessories P21, Jul. 15, 1995.
B.B. sol, S.A. Berthet-Mondet, 1966.
B.B. sol, "Sont Equipees De Verres Sovirel," 1971.
B.B. sol, "b.b.sol 1974".
Spectacles, Publication Boxes, DOMUS, p. 55, Oct. 1985.
Accessories Magazine, p. 14, Oct. 1986.
B.B. sol, "Lunettes De Soleil," 1988.
B.B. sol, "Lunettes De Soleil," 1989.
Accessories Magazine, p. 11, Apr. 1991.
B.B. sol, "Protege Vos Yeux," 1993.
Magazine, "Surfing," Aug. 1993.
Berthet-Bondet, "Protege Vos Yeux," 1994.
Alpina, "Optik 1996".
Catalogue, Sunglass Hut International, Spring Sport 1996.
Loubsol, "La Technologie Au Service Du Sport," Sport 1996.
Catalogue, Frames, Summer 1996.
Frames, "Sun & Sport Eyewear," Fall 1996.

(List continued on next page.)

*Primary Examiner*—Raphael Barkai
*Attorney, Agent, or Firm*—Knobbe, Martens, Olson & Bear, LLP

[57] CLAIM

The ornamental design for eyeglasses, as shown and described.

## DESCRIPTION

FIG. 1 is a front perspective view of the eyeglasses of the present invention;
FIG. 2 is a front elevational view thereof;
FIG. 3 is a rear elevational view thereof;
FIG. 4 is a left-side elevational view thereof, the right-side elevational view being a mirror image thereof;
FIG. 5 is a top plan view thereof; and,
FIG. 6 is a bottom plan view thereof.

1 Claim, 4 Drawing Sheets



OTHER PUBLICATIONS

Catalogue. "Sunglass Hut International." Summer 1996.
Alpina. "High Impact." Ski & Sports Glasses by Alpina. 1996/1997.
Catalogue. "Frames–Winter 1997".
Loubsol. "The Lunette France." 1997.
Catalogue. B.B. Sol. pp. 1–7. No date.
Catalogue. B.B. Sol. "Lunetterie Berthet–Bondet." pp. 1–10. No date.
Catalogue, Loubsol. "Mixte–Jeune." pp. 1–15. No date.
Catalogue. Sunglass Hut International. "Revo Miracles Happen . . ." pp. 1–7. No date.



FIG. 1

FIG. 2



FIG. 3



FIG. 4



FIG.5



FIG. 6



US00D461834S

(12) **United States Design Patent**
**Jannard et al.**

(10) **Patent No.: US D461,834 S**
(45) **Date of Patent: ** Aug. 20, 2002**

(54) **EYEGLASS AND EYEGLASS COMPONENTS**

(75) Inventors: **James H. Jannard**, Spieden Island; **Lek Thixton**, Eastsound, both of WA (US); **Peter Yee**; **Colin Baden**, both of Irvine, CA (US)

(73) Assignee: **Oakley, Inc.**, Foothill Ranch, CA (US)

(**) Term: **14 Years**

(21) Appl. No.: **29/134,462**

(22) Filed: **Dec. 20, 2000**

(51) **LOC (7) Cl.** .................... **16-06**
(52) **U.S. Cl.** .................... **D16/326**; D16/335; D16/334
(58) **Field of Search** .................... D16/300–330, D16/335, 334; D29/109, 110; 351/41, 44, 51, 52, 158, 111; 2/447, 448

(56) **References Cited**

U.S. PATENT DOCUMENTS


| | | | |
|---|---|---|---|
| D167,704 S | 5/1952 | McCardell | |
| D192,884 S | 5/1962 | Petitto | |
| D193,028 S | 6/1962 | Petitto | |
| D202,129 S | 8/1965 | Marchi | |
| D202,658 S | * 10/1965 | Petitto | D16/326 |
| D204,812 S | 5/1966 | Shindler | |
| D209,862 S | 1/1968 | McCracken | |
| D214,292 S | 5/1969 | Mitchell | |
| 3,689,136 A | 9/1972 | Atamian | |
| D339,816 S | 9/1993 | Jackson | |
| D347,014 S | 5/1994 | Arnette | |
| D368,732 S | 4/1996 | Lei | |
| D369,375 S | 4/1996 | Jannard et al. | |
| D376,810 S | 12/1996 | Ohie | |
| D378,375 S | 3/1997 | Tsai | |
| D378,376 S | 3/1997 | Tsai | |
| D384,686 S | 10/1997 | Jannard et al. | |
| D385,291 S | 10/1997 | Jannard et al. | |
| D390,589 S | 2/1998 | Simioni | |
| D392,307 S | 3/1998 | Wilson | |
| D397,350 S | 8/1998 | Jannard et al. | |
| D399,238 S | 10/1998 | Simioni | |
| D399,239 S | 10/1998 | Jannard et al. | |
| D400,229 S | 10/1998 | Arnette | |
| D402,304 S | 12/1998 | Jannard et al. | |
| D404,754 S | 1/1999 | Yee et al. | |


(List continued on next page.)

OTHER PUBLICATIONS

Asia Pacific Trading Company, Inc., "Asia Pacific 1999–2000", pp. 19 (model 9908SD), 21 (model P3166SD), P4899SD, P5099SD), 33 (PC6507PM), 37 (model RE134/SP), 38 (models RE657, RE751LP, RE751P, RE802/SP), and 52 (model N6029SD/MX.PM), unknown publisher and publishing date.
Asia Pacific Trading Company, Inc., "Asia Pacific 2000 Supplement", pp. 7 (model MP3378SD and MP5681SD), 12 (model P1127POL), 18 (model M965028SD), 20 (P5217CP), and 21 (P87150SD), unknown publisher and publishing date.
Le Lunnett B.B Sol, "B.B.Sol mode 72", p. 5 (model 2563), unknown publisher and publishing date, Oyannax, France.
Les B.B Sol, "B.B. Sol", p. 6 (model 207D or 2204D), unknown publisher and publishing date, Oyannax, France.
Sunglass Hut International, "Spring Sport 1996", p. 7 (bottom right glass) and p. 10 (bottom glass), unknown publisher and publishing date.

*Primary Examiner*—Raphael Barkai
(74) *Attorney, Agent, or Firm*—Gregory Nelson

(57) **CLAIM**

The ornamental design for an eyeglass and eyeglass components, as shown and described.

**DESCRIPTION**

FIG. 1 is a front perspective view of the eyeglass and the eyeglass components of the present invention;
FIG. 2 is a front elevational view thereof;
FIG. 3 is a rear elevational view thereof;
FIG. 4 is a left-side elevational view thereof, the right-side elevational view being a mirror image thereof;
FIG. 5 is a top view thereof; and,
FIG. 6 is a bottom view thereof.

**1 Claim, 4 Drawing Sheets**



EXHIBIT 11, Page 1 of 6

U.S. PATENT DOCUMENTS

| | | | | | |
|---|---|---|---|---|---|
| D408,048 | S | | 4/1999 | Jannard et al. | |
| D414,796 | S | | 10/1999 | Arnette | |
| D415,188 | S | | 10/1999 | Thixton et al. | |
| D420,035 | S | * | 2/2000 | Hartman .................... | D16/325 |
| D422,010 | S | | 3/2000 | Arnette | |
| D422,298 | S | | 4/2000 | Jannard et al. | |
| D422,299 | S | | 4/2000 | Jannard et al. | |
| D423,034 | S | | 4/2000 | Arnette | |
| D423,548 | S | | 4/2000 | Yee et al. | |
| D425,103 | S | | 5/2000 | Yee et al. | |
| D449,641 | S | * | 10/2001 | Arnette ...................... | D16/326 |

* cited by examiner



FIG. 1



FIG. 2



FIG. 3



FIG. 4



FIG.5



FIG. 6

US00D399866S


# United States Patent [19]

Yee

[11] Patent Number: Des. 399,866

[45] Date of Patent: **Oct. 20, 1998


[54] EYEGLASS COMPONENT


[75] Inventor: Peter Yee, Irvine, Calif.

[73] Assignee: Oakley, Inc., Foothill Ranch, Calif.



[**] Term: 14 Years

[21] Appl. No.: 75,379

[22] Filed: Aug. 12, 1997

Related U.S. Application Data

[62] Division of Ser. No. 55,504, Jun. 6, 1996, Pat. No. Des. 384,364.

[51] LOC (6) Cl. .......... 16-06

[52] U.S. Cl. .......... D16/330

[58] Field of Search .......... D16/100, 300, D16/306, 304, 309, 311–317, 319, 325–330, 335; 351/41, 44, 51–52, 103, 105, 106, 109, 111, 118, 119, 124; 2/447, 448


[56] References Cited

U.S. PATENT DOCUMENTS


| | | | |
|---|---|---|---|
| D. 145,288 | 7/1946 | Di Cicco . | |
| D. 202,130 | 8/1965 | Mitchell | D16/326 |
| D. 204,417 | 4/1966 | Shindler | D16/326 |
| D. 322,975 | 1/1992 | Bolle . | |
| D. 323,333 | 1/1992 | Jannard et al. | D16/314 |
| D. 323,665 | 2/1992 | Simioni | D16/314 |
| D. 324,394 | 3/1992 | Jannard . | |
| D. 324,528 | 3/1992 | Jannard . | |
| D. 325,040 | 3/1992 | Jannard . | |
| D. 328,468 | 8/1992 | Jannard . | |
| D. 329,445 | 9/1992 | Jannard . | |
| D. 330,035 | 10/1992 | Jannard . | |
| D. 330,716 | 11/1992 | Jannard . | |
| D. 330,903 | 11/1992 | Jannard . | |
| D. 331,587 | 12/1992 | Jannard et al. . | |
| D. 331,763 | 12/1992 | Jannard . | |
| D. 333,145 | 2/1993 | Jannard . | |
| D. 334,389 | 3/1993 | Bolle | D16/314 |
| D. 335,887 | 5/1993 | Jannard . | |
| D. 344,742 | 3/1994 | Jannard | D16/314 |
| D. 354,501 | 1/1995 | Jannard | D16/314 |
| D. 369,375 | 4/1996 | Jannard et al. . | |
| D. 371,383 | 7/1996 | Goldman | D16/327 |
| 2,388,687 | 11/1945 | Hammon . | |
| 3,531,189 | 9/1970 | Petito . | |
| 3,689,136 | 9/1972 | Atamian . | |
| 4,730,915 | 3/1988 | Jannard | 351/44 |
| 5,208,614 | 5/1993 | Jannard . | |
| 5,249,001 | 9/1993 | Jannard . | |
| 5,412,438 | 5/1995 | Bolle | 351/44 |

OTHER PUBLICATIONS

Oakley Blades, Mud Pack System, Razor Blades and Eyeshade System Advertisement, *American Bicyclist & Motorcyclist*, p. 40, Mar. 1988.

"For Your Eyes Only . . . " Advertisement, *Runner's World*, p. 46, Jul. 1990.

*Oakley Frogskins, Blades and Mumbos* Product Brochure, 1990.

Various Sunglasses, Advertisement, *Surfing Magazine*, Aug. 1993.


*Primary Examiner*—Raphael Barkai

*Attorney, Agent, or Firm*—Knobbe, Martens, Olson & Bear, LLP

[57] CLAIM

The ornamental design for eyeglass component, as shown and described.

## DESCRIPTION

FIG. 1 is a front perspective view of the eyeglass component of the present invention;

FIG. 2 is a front elevational view of the eyeglass component of FIG. 1;

FIG. 3 is a rear elevational view of the eyeglass component of FIG. 1;

FIG. 4 is a right-side elevational view of the eyeglass component of FIG. 1, the left-side elevational view being a mirror image thereof;

FIG. 5 is a top plan view of the eyeglass component of FIG. 1; and,

FIG. 6 is a bottom plan view of the eyeglass component of FIG. 1.

The broken lines shown in FIG. 1 are for illustrative purposes only and form no part of the claimed design.

1 Claim, 4 Drawing Sheets





FIG. 1

FIG. 2



FIG. 3



FIG. 4



FIG. 5



FIG. 6



EXHIBIT 12, Page 5 of 5

US00D422298S

# United States Patent [19]

Jannard et al.

[11] Patent Number: Des. 422,298

[45] Date of Patent: ** Apr. 4, 2000

[54] EYEGLASS COMPONENTS

[75] Inventors: James H. Jannard, Spieden Island, Wash.; Colin Baden, Irvine; Hans Moritz, San Clemente, both of Calif.

[73] Assignee: Oakley, Inc., Foothill Ranch, Calif.

[**] Term: 14 Years

[21] Appl. No.: 29/096,508

[22] Filed: Nov. 13, 1998

[51] LOC (6) Cl. .................... 16-06

[52] U.S. Cl. .................... D16/326; D16/319

[58] Field of Search .................... D16/101, 300–330; 351/41, 44, 51, 52, 158, 90, 96, 124, 132; 2/447, 448

[56] References Cited

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| D. 198,719 | 7/1964 | McCulloch . | |
| D. 383,149 | 9/1997 | Simioni . | |
| D. 392,662 | 3/1998 | Jannard | D16/330 |
| D. 397,351 | 8/1998 | Simioni | D16/325 |
| D. 398,326 | 9/1998 | Jannard et al. | D16/326 |
| D. 400,230 | 10/1998 | Amene | D16/326 |
| D. 407,099 | 3/1999 | Wang | D16/326 |
| D. 407,428 | 3/1999 | Jannard | D16/319 |
| 3,684,356 | 8/1972 | Bates . | |

FOREIGN PATENT DOCUMENTS

1184347 2/1968 United Kingdom .

OTHER PUBLICATIONS

B.B. sol—Les lunettes/sont equipees de verres SOVIREL (1971).
B.B. sol—Lunettes de Soleil (1986).
Berther-Bonder (1995).
Solex Quality Optics (Skiing Sep. 1992).

*Primary Examiner*—Raphael Barkai
*Attorney, Agent, or Firm*—Knobbe, Martens, Olson & Bear, LLP

[57] CLAIM

The ornamental design for eyeglass components, as shown and described.

DESCRIPTION

FIG. 1 is a front perspective view of the eyeglass components of the present invention;
FIG. 2 is a front elevational view thereof;
FIG. 3 is a rear elevational view thereof;
FIG. 4 is a right-side elevational view thereof, the left-side elevational view being a mirror image thereof;
FIG. 5 is a top plan view thereof; and
FIG. 6 is a bottom plan view thereof.

1 Claim, 3 Drawing Sheets





*FIG. 1*



FIG. 2



FIG. 3



FIG. 4



FIG.5



FIG.6

Exhibit 13, Page 4 of 4

US00D415188S

# United States Patent [19]

Thixton et al.

[11] Patent Number: Des. 415,188

[45] Date of Patent: ** Oct. 12, 1999

[54] EYEGLASSES

[75] Inventors: Lek H. Thixton, Eastsound, Wash.; Colin Baden, Irvine, Calif.; James H. Jannard, Eastsound, Wash.; Peter Yee, Irvine, Calif.

[73] Assignee: Oakley, Inc., Foothill Ranch, Calif.

[**] Term: 14 Years

[21] Appl. No.: 29/087,390

[22] Filed: May 1, 1998

[51] LOC (6) Cl. .......... 16-06

[52] U.S. Cl. .......... D16/326; D16/321

[58] Field of Search .......... D16/101, 300-330, D16/335; 351/41, 44, 51, 52, 111, 121, 158; 2/428, 430, 432, 447-449

[56] References Cited

U.S. PATENT DOCUMENTS

D. 167,704 9/1952 McCardell .
D. 187,299 2/1960 Behr .
D. 189,436 12/1960 Carmichael .
D. 198,939 8/1964 Huggins .
D. 199,150 9/1964 Carmichael .
D. 204,417 4/1966 Shindler .
D. 204,418 4/1966 Ramp .
D. 205,093 6/1966 Gaboriault .
D. 205,419 8/1966 Griss .
D. 209,095 10/1967 Ramp .
D. 339,816 9/1993 Jackson .
D. 347,014 5/1994 Arnette .
D. 366,892 2/1996 Arnette .
D. 368,732 4/1996 Lei .
D. 369,375 4/1996 Jannard et al. .
D. 371,387 7/1996 Goldman .
D. 376,810 12/1996 Ohie .
D. 384,363 9/1997 Park .......... D16/328
D. 399,239 10/1998 Jannard et al. .......... D16/326
D. 399,243 10/1998 Jannard et al. .......... D16/335
D. 410,484 6/1999 Jannard et al. .......... D16/326
3,155,982 11/1964 Baratelli .
3,156,756 11/1964 Seaver .
3,531,189 9/1970 Petito .
4,240,718 12/1980 Wichers .
5,541,674 7/1996 Jannard et al. .
5,610,668 3/1997 Mage .
5,638,145 6/1997 Jannard et al. .
5,648,832 7/1997 Houston et al. .
5,760,868 6/1998 Jannard et al. .......... 351/41

FOREIGN PATENT DOCUMENTS

0 496 292 A1 7/1992 European Pat. Off. .

OTHER PUBLICATIONS

Trade Winds Monthly, Nov. 1994, p. 212.
(Frames) Sun & Sport Eyewear, Fall 1996, pp. 8 & 9.
Surfing 26, Aug. 1993, 3 pp. in total.
(Unknown Origin) Advertisement, 1 p. only.
Domus, Oct. 1985, p. 55.
Accessories, Oct. 1986, p. 14.
(Frames), Sun & Sport Eyewear, Summer 1996, 3 pp. in total.

(List continued on next page.)

Primary Examiner—Raphael Barkai
*Attorney, Agent, or Firm*—Knobbe, Martens, Olson & Bear, LLP

[57] CLAIM

The ornamental design for eyeglasses, as shown and described.

## DESCRIPTION

FIG. 1 is a perspective view of the eyeglasses of the present invention;
FIG. 2 is a front elevational view thereof;
FIG. 3 is a rear elevational view thereof;
FIG. 4 is a left side elevational view thereof, the right side elevational view being a mirror image thereof;
FIG. 5 is a top plan view thereof; and,
FIG. 6 is a bottom plan view thereof.

1 Claim, 4 Drawing Sheets



EXHIBIT 14, Page 1 of 6

OTHER PUBLICATIONS

Sunglass Hut International, Spring Sport 1996. 4 pp. in total.
Sunglass Hut International, Revo Miracles Happen. 7 pp. in total.
Optical Journal & Review of Optometry. Nov. 1, 1971, p. 12.
Eyestyle. p. 53, form and function.
Accessories Magazine, Apr. 1991, p. 11.
Cover Girl Advertisement. 1 p. only.
Frames #115, Winter 1997, Adrienne Vittadini, pp. 600, 611, 676, 807, 839, 1145, 1150–1151, 1159, 1161, 1165, 1172, 1177, 1189–1190, 1198, 1209, 1211–1213, 1265, 1277–1278, 1280, E2, E84–E85.
Frames #113, Summer 1996, pp. 327, 331, 336, 437, 666, 790, 795, 968, 1026, 1119, 1142, 1163, 1183, 1203, 1225, E77.
Mountain Bike Action Magazine, Sep. 1990, p. 16.
Alpine International, Optik 1995/1996, pp. 1–32.
Wilh. Stattlec, Preisliste 1996, 16 pp. in total.
Alpina, Advertisement, 14 pp. in total.
Alpina Professional Eyewear, Optik 1996, pp. 3, 5, 7.
Accessories, Dec. 1986, Front Cover.
Sunglass Hut International Catalog Holiday, 1994, Advertisement of 1 p. only.
Berthet-Bondet, 1994, 9 pp. in total.
Lunettes de Soleil, 1990, 4 pp. in total.
Lunettes de Soleil, 1989, 9 pp. in total.
B.B. Sol, Lunettes de Soleil, 1986, pp. 1, 2, 4, 6, 10, 14, 16, 12.
B.B. Sol, Lunettes de Soleil, 1984, 6 pp. in total.
B.B. Sol, 1974, 19 pp. in total.
B.B. Sol Mode 73, 16 pp. in total.
B.B. Sol, Lunettes Sont Equipees de Verres, Sovirel, Advertisement, 21 pp. in total.
B.B. Sol, Les Lunettes Sont Equipees de Verres, Sovirel, 1968, 9 pp. in total.
B.B. Sol, 1962, 2 pp. in total.
B.B. Sol, Advertisement, Model No. 2210–D, 5 pp. in total.
B.B. Sol, Advertisement, Model No. 2165–D, 5 pp. in total.
Loris Azzaro Paris, Advertisement 1 p. only.



FIG. 1



FIG. 2



FIG. 3



FIG. 4

FIG. 5



EXHIBIT M, Page 5 of 6

*FIG. 6*



US00D470166S

(12) United States Design Patent (10) Patent No.: US D470,166 S
Yee et al. (45) Date of Patent: ** Feb. 11, 2003

(54) EYEGLASS COMPONENTS

(75) Inventors: **Peter Yee**, Irvine, CA (US); **Colin Baden**, Irvine, CA (US); **James H. Jannard**, Spieden Island, WA (US)

(73) Assignee: **Oakley, Inc.**, Foothill Ranch, CA (US)

(**) Term: **14 Years**

(21) Appl. No.: **29/146,178**

(22) Filed: **Aug. 3, 2001**

(51) **LOC (7) Cl.** .................................................. **16-06**
(52) **U.S. Cl.** .................................... **D16/326**; D16/327
(58) **Field of Search** ............................... D16/300–330, D16/101; 351/41, 44, 51, 52, 90, 158; 2/447, 448

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| D198,719 S | | 7/1964 | McCulloch |
| 3,684,356 A | | 8/1972 | Bates |
| D383,149 S | | 9/1997 | Simioni |
| 5,708,489 A | | 1/1998 | Jannard |
| D392,662 S | | 3/1998 | Jannard |
| D397,351 S | | 8/1998 | Simioni |
| D398,326 S | | 9/1998 | Jannard et al. |
| D400,230 S | | 10/1998 | Arnette |
| D407,099 S | | 3/1999 | Wang |
| D407,428 S | | 3/1999 | Jannard |
| D408,049 S | | 4/1999 | Jannard et al. |
| D410,484 S | | 6/1999 | Jannard et al. |
| D410,485 S | | 6/1999 | Jammard et al. |
| D415,188 S | | 10/1999 | Thixton et al. |
| D422,298 S | | 4/2000 | Jannard |
| D439,599 S | * | 3/2001 | Yasuhara .................. D16/319 |
| D446,803 S | * | 8/2001 | Jannard et al. ........... D16/326 |

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| GB | 1184347 | 2/1968 |

OTHER PUBLICATIONS

B.B. Sol—Les lunettes/sonr equipees de verres SOVIREL (1971).
B.B. Sol–Lunetes de Soleil (1986).
Berther-Bonder (1995.
U.S. patent application Ser. No. 29/134,653, Thixton et al., filed Dec. 21, 2000, pending.
U.S. patent application Ser. No. 29/142,309, Thixton et al., filed May 23, 2001, pending.

* cited by examiner

*Primary Examiner*—Raphael Barkai
(74) *Attorney, Agent, or Firm*—Gregory Nelson

(57) **CLAIM**

The ornamental design for eyeglass components, as shown and described.

**DESCRIPTION**

FIG. 1 is a front perspective view of the eyeglass components of the present invention;
FIG. 2 is a front elevational view thereof;
FIG. 3 is a rear elevational view thereof;
FIG. 4 is a left-side elevational view thereof, the right-side elevational view being a mirror image thereof;
FIG. 5 is a top plan view thereof; and,
FIG. 6 is a bottom plan view thereof.
Phantom lining, where utilized, is for illustrative purposes only and is not intended to limit the claimed design to the features shown in phantom.

**1 Claim, 3 Drawing Sheets**



EXHIBIT 15, Page 1 of 4



FIG. 1



FIG.2



FIG.3



FIG.4



FIG.5



FIG.6

EXHIBIT 15 Page 4 of 4

US00D398326S

# United States Patent [19]

Jannard et al.

[11] Patent Number: Des. 398,326

[45] Date of Patent: **Sep. 15, 1998

[54] EYEGLASS FRONT

[75] Inventors: **James H. Jannard**, Eastsound, Wash.; **Peter Yee**, Irvine, Calif.; **Toby Rohrbach**, Mission Viejo, Calif.; **Hanz Moritz**, South Pasadena, Calif.

[73] Assignee: **Oakley, Inc.**, Foothill Ranch, Calif.

[**] Term: 14 Years

[21] Appl. No.: **66,770**

[22] Filed: **Feb. 18, 1997**

**Related U.S. Application Data**

[63] Continuation-in-part of Ser. No. 54,494, May 2, 1996.

[51] **LOC (6) Cl.** ........ 16-06

[52] **U.S. Cl.** ........ **D16/326**

[58] **Field of Search** ........ D16/101, 300, D16/304, 309, 311–312, 313–317, 319, 321, 325–330; 351/41, 44, 51, 158; 2/428, 430, 432, 447, 449

[56] **References Cited**

U.S. PATENT DOCUMENTS

D. 167,704 9/1952 McCardell .
D. 196,000 8/1963 McNeill .
D. 204,417 4/1966 Shindler .
D. 204,418 4/1966 Ramp .
D. 205,419 8/1966 Griss .
D. 206,353 11/1966 Bloch .
D. 209,095 10/1967 Ramp .
D. 214,292 5/1969 Mitchell .
D. 347,014 5/1994 Arnette .
D. 358,600 5/1995 Jannard .
D. 365,591 12/1995 Jannard et al. .
D. 369,375 4/1996 Jannard et al. .
D. 370,932 6/1996 Masuda ........ D16/326
D. 379,824 6/1997 Yadotani ........ D16/326
5,541,674 7/1996 Jannard .

OTHER PUBLICATIONS

"Spectacles" Publ. Boxes, Domus Oct. 1985., p. 55.
Sunglass Hut International Revo "Miracles Happen . . . ". B.B.sol Advertisement.

*Primary Examiner*—Raphael Barkai
*Attorney, Agent, or Firm*—Knobbe, Martens, Olson & Bear, LLP

[57] **CLAIM**

The ornamental design for eyeglass front, as shown and described.

**DESCRIPTION**

FIG. 1 is a front perspective view of the eyeglass front of the present invention;
FIG. 2 is a front elevational view thereof;
FIG. 3 is a rear elevational view thereof;
FIG. 4 is a left side elevational view thereof, the right side elevational view being a mirror image thereof;
FIG. 5 is a top plan view thereof; and,
FIG. 6 is a bottom plan view thereof.

**1 Claim, 3 Drawing Sheets**



Exhibit 16, Page 1 of 4



Fig. 1

*Fig. 2*



*Fig. 3*



*Fig. 4*



*Fig. 5*



*Fig. 6*



Exhibit 16, Page 4 of 4

US00D463478S

# (12) United States Design Patent

Moritz

(10) Patent No.: **US D463,478 S**

(45) Date of Patent: ** **Sep. 24, 2002**

(54) **EYEGLASS AND EYEGLASS COMPONENTS**

(75) Inventor: **Hans Karsten Moritz**, Foothill Ranch, CA (US)

(73) Assignee: **Oakley, Inc.**, Foothill Ranch, CA (US)

(**) Term: **14 Years**

(21) Appl. No.: **29/142,084**

(22) Filed: **May 16, 2001**

(51) **LOC (7) Cl.** ........................................ **16-06**

(52) **U.S. Cl.** ........................................ **D16/326**

(58) **Field of Search** .................. D16/101, 300–330; D29/109, 110; 350/41, 44, 51, 52, 158; 2/447, 448

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| D116,259 | S | 8/1939 | Cook |
| D146,538 | S | 4/1947 | Gagnon |
| D167,704 | S | 9/1952 | McCardell |
| D187,299 | S | 2/1960 | Behr |
| D189,436 | S | 12/1960 | Carmichael |
| D192,884 | S | 5/1962 | Petitto |
| D193,028 | S | 6/1962 | Petitto |
| D198,939 | S | 8/1964 | Huggins |
| D204,417 | S | 4/1966 | Shindler |
| D204,418 | S | 4/1966 | Ramp |
| D205,419 | S | 8/1966 | Griss |
| D209,095 | S | 10/1967 | Ramp |
| 3,552,840 | A | 1/1971 | Braget |
| D300,226 | S | 3/1989 | Ramp |
| D347,014 | S | 5/1994 | Amette |
| D354,501 | S | 1/1995 | Jannard |
| D366,667 | S | 1/1996 | Amette |
| D366,892 | S | 2/1996 | Amette |
| D368,732 | S | 4/1996 | Lei |
| D369,375 | S | 4/1996 | Jannard et al. |
| D371,383 | S | 7/1996 | Goldman |
| D376,810 | S | 12/1996 | Ohie |
| D378,375 | S | 3/1997 | Tsai |
| D384,686 | S | 10/1997 | Jannard et al. |
| D385,291 | S | 10/1997 | Jannard et al. |
| D387,794 | S | 12/1997 | Mage |
| D389,504 | S | 1/1998 | Simioni |
| D390,589 | S | 2/1998 | Simioni |
| D397,350 | S | 8/1998 | Jannard et al. |

(List continued on next page.)

OTHER PUBLICATIONS

B.B. Sol, "Mode 72", published by B.B. Sol, France, unknown publishing date.

U.S. patent application Ser. No. 29/134,638, Jannard et al., filed Dec. 21, 2000.

U.S. patent application Ser. No. 29/134,462, Jannard et al., filed Dec. 20, 2000.

U.S. patent application Ser. No. 29/139,290, Jannard et al., filed Mar. 28, 2001.

U.S. patent application Ser. No. 29/133,945, Jannard et al., Dec. 11, 2000.

U.S. patent application Ser. No. 29/142,308, Jannard et al., May 23, 2001.

*Primary Examiner*—Raphael Barkai

(74) *Attorney, Agent, or Firm*—Gregory K. Nelson

(57) **CLAIM**

The ornamental design for an eyeglass and eyeglass components, as shown and described.

**DESCRIPTION**

FIG. 1 is a front perspective view of the eyeglass and the eyeglass components of the present invention;

FIG. 2 is a front elevational view thereof;

FIG. 3 is a rear elevational view thereof;

FIG. 4 is a top plan view thereof;

FIG. 5 is a bottom plan view thereof; and,

FIG. 6 is a left-side elevational view thereof, the right-side elevational view being a mirror image thereof.

Phantom lining, where utilized, is for illustrative purposes only and is not intended to limit the claimed design to the features shown in phantom.

**1 Claim, 3 Drawing Sheets**



U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| D397,351 | S | 8/1998 | Simioni |
| D398,022 | S | 9/1998 | Jannard et al. |
| D399,238 | S | 10/1998 | Simioni |
| D399,239 | S | 10/1998 | Jannard et al. |
| D400,908 | S | 11/1998 | Arnette |
| D402,304 | S | 12/1998 | Jannard et al. |
| D403,692 | S | 1/1999 | Arnette |
| D408,048 | S | 4/1999 | Jannard et al. |
| D415,188 | S | 10/1999 | Thixton et al. |
| D422,299 | S | 4/2000 | Jannard et al. |
| D423,034 | S | 4/2000 | Arnette |
| D423,035 | S | 4/2000 | Yee et al. |
| D423,548 | S | 4/2000 | Yee et al. |
| D426,568 | S | 6/2000 | Conway |
| D432,157 | S | 10/2000 | Simioni |



FIG. 1

EXHIBIT 17, Page 3 of 5



FIG. 2



FIG. 3



FIG. 4



FIG. 5



FIG. 6

EXHIBIT 17, Page 5 of 5

US00D384686S

# United States Patent [19]

Jannard et al.

[11] Patent Number: Des. 384,686

[45] Date of Patent: **Oct. 7, 1997

[54] EYEGLASS FRONT

[75] Inventors: James H. Jannard, East Sound, Wash.; Peter K. Yee, Irvine, Calif.

[73] Assignee: Oakley, Inc., Foothill Ranch, Calif.

[**] Term: 14 Years

[21] Appl. No.: 52,265

[22] Filed: Mar. 27, 1996

[51] LOC (6) Cl. ........................................ 16-06

[52] U.S. Cl. ........................................ D16/326

[58] Field of Search ........................ D16/300, 302, D16/311, 315–330; 351/41, 44, 51, 52, 158, 83; 2/447, 448

[56] References Cited

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| Re. 17,994 | 3/1931 | Emons . | |
| D. 116,258 | 8/1939 | Cook | D16/320 |
| D. 145,288 | 7/1946 | Di Cicco . | |
| D. 196,000 | 8/1963 | McNeill . | |
| D. 199,150 | 9/1964 | Carmichael et al. . | |
| D. 200,391 | 2/1965 | Baratelli . | |
| D. 202,129 | 8/1965 | Marchi . | |
| D. 214,292 | 5/1969 | Mitchell . | |
| D. 228,026 | 7/1973 | Shindler . | |
| D. 268,683 | 4/1983 | Tenny . | |
| D. 320,402 | 10/1991 | Jannard et al. . | |
| D. 322,975 | 1/1992 | Bolle . | |
| D. 324,394 | 3/1992 | Jannard . | |
| D. 339,816 | 9/1993 | Jackson | D16/300 |
| D. 342,534 | 12/1993 | Jannard et al. . | |
| D. 347,014 | 5/1994 | Ametto | D16/326 |
| D. 358,600 | 5/1995 | Jannard . | |
| D. 362,260 | 9/1995 | Lin | D16/329 |
| D. 368,732 | 4/1996 | Lei | D16/326 |
| D. 369,375 | 4/1996 | Jannard et al. . | |
| 836,796 | 11/1906 | Anderson . | |
| 1,338,880 | 5/1920 | Stevens . | |
| 2,031,771 | 2/1936 | Grier . | |
| 2,482,664 | 9/1949 | Gagnon . | |
| 2,511,329 | 6/1950 | Craig . | |
| 2,949,638 | 8/1960 | Butler . | |
| 3,156,756 | 11/1964 | Seaver . | |
| 3,526,449 | 9/1970 | Bolle et al. . | |
| 3,531,189 | 9/1970 | Petito . | |
| 3,689,136 | 9/1972 | Atamian . | |
| 5,541,674 | 7/1996 | Jannard | 351/44 |

FOREIGN PATENT DOCUMENTS

PCTUS9107761 10/1991 WIPO .

OTHER PUBLICATIONS

Accessories, Dec. 1986 front cover.
*Opt. J. Rev. Optom.*, vol. 108, No. 18, p. 36, Sep. 15, 1971.
*Optometric Weekly*, p. 25, Jul. 5, 1973.
*Optometric Weekly*, p. 23, Jun. 13, 1974.
*American Bicyclist & Motorcyclist*, p. 41, Mar. 1988.
*Vogue*, p. 301, May 1992.
*Asian Consumer Goods for Export, Trade Winds Monthly*, p. 212, Nov. 1994.

*Primary Examiner*—Raphael Barkai
*Attorney, Agent, or Firm*—Knobbe, Martens, Olson & Bear, LLP

[57] CLAIM

The ornamental design for eyeglass front, as shown and described.

## DESCRIPTION

FIG. 1 is a front perspective view of the eyeglass front of the present invention;
FIG. 2 is a front elevational view of the eyeglass front of FIG. 1;
FIG. 3 is a rear elevational view of the eyeglass front of FIG. 1;
FIG. 4 is a right side elevational view of the eyeglass front of FIG. 1, the left side elevational view being a mirror image thereof;
FIG. 5 is a bottom plan view of the eyeglass front of FIG. 1; and,
FIG. 6 is a top plan view of the eyeglass front of FIG. 1.
The broken line showing of the earstems in FIG. 1 is for illustrative purposes only and forms no part of the claimed design.

1 Claim, 3 Drawing Sheets



EXHIBIT 18, Page 1 of 4



Fig. 1



Fig.2



Fig.3



Fig.4

EXHIBIT 18, Page 3 of 4



Fig. 5



Fig. 6

US00D477623S

(12) **United States Design Patent** (10) Patent No.: **US D477,623 S**
Thixton et al. (45) Date of Patent: ** **Jul. 22, 2003**

(54) **EYEGLASS FRONT**

(75) Inventors: **Lek Thixton**, Eastsound, WA (US); **Peter Yee**, Irvine, CA (US); **James H. Jannard**, Spieden Island, WA (US); **Colin Baden**, Irvine, CA (US)

(73) Assignee: **Oakley, Inc.**, Foothill Ranch, CA (US)

(**) Term: **14 Years**

(21) Appl. No.: **29/170,955**

(22) Filed: **Nov. 13, 2002**

(51) **LOC (7) Cl.** ........................................ **16-06**
(52) **U.S. Cl.** ........................................ **D16/326**
(58) **Field of Search** ..................... D16/101, 300–330; D29/109, 110; 351/41, 44, 51, 52, 158, 90; 2/447, 448

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| D198,719 S | 7/1964 | McCulloch |
| 3,684,356 A | 8/1972 | Bates |
| D383,149 S | 9/1997 | Simioni |
| 5,708,489 A | 1/1998 | Jannard |
| D392,662 S | 3/1998 | Jannard |
| D397,350 S | 8/1998 | Jannard et al. |
| D397,351 S | 8/1998 | Simioni |
| D398,326 S | 9/1998 | Jannard et al. |
| D400,230 S | 10/1998 | Arnette |
| D404,754 S | 1/1999 | Yee et al. |
| D407,099 S | 3/1999 | Wang |
| D407,428 S | 3/1999 | Jannard |
| D408,049 S | 4/1999 | Jannard et al. |
| D410,484 S | 6/1999 | Jannard et al. |
| D410,485 S | 6/1999 | Jannard et al. |
| D415,188 S | 10/1999 | Thixton et al. |

(List continued on next page.)

FOREIGN PATENT DOCUMENTS

GB 1184347 2/1968

OTHER PUBLICATIONS

B.B. Sol–Les lunettes/sonr equipees de verres SOVIREL (1971).
B.B. Sol–Lunetes de Soleil (1986).

(List continued on next page.)

*Primary Examiner*—Raphael Barkai
(74) *Attorney, Agent, or Firm*—Gregory K. Nelson

(57) **CLAIM**

The ornamental design for an eyeglass front, as shown and described.

**DESCRIPTION**

FIG. 1 is a front perspective view of the eyeglass front;
FIG. 2 is a front elevational view of the eyeglass front of FIG. 1;
FIG. 3 is a rear elevational view of the eyeglass front of FIG. 1;
FIG. 4 is a left side elevational view of the eyeglass front of FIG. 1, the right-side elevational view being a mirror image thereof;
FIG. 5 is a top plan view of the eyeglass front of FIG. 1;
FIG. 6 is a bottom plan view of the eyeglass front of FIG. 1;
FIG. 7 is a front perspective view of an alternate embodiment of the eyeglass front;
FIG. 8 is a front elevational view of the eyeglass front of FIG. 7;
FIG. 9 is a rear elevational view of the eyeglass front of FIG. 7;
FIG. 10 is a left-side elevational view of the eyeglass front of FIG. 7, the right-side elevational view being a mirror image thereof;
FIG. 11 is a top plan view of the eyeglass front of FIG. 7; and,
FIG. 12 is a bottom plan view of the eyeglass front of FIG. 7.
Phantom lining, where utilized, is for illustrative purposes only and is not intended to limit the claimed design to the features shown in phantom.

**1 Claim, 6 Drawing Sheets**



U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| D422,298 S | | 4/2000 | Jannard |
| D423,548 S | | 4/2000 | Yee et al. |
| D425,103 S | | 5/2000 | Yee et al. |
| D426,258 S | * | 6/2000 | Jannard ..................... D16/326 |
| D446,803 S | | 8/2001 | Jannard et al. |
| D456,441 S | | 4/2002 | Jannard et al. |
| D461,834 S | | 8/2002 | Jannard et al. |
| D463,478 S | | 9/2002 | Moritz |
| D464,669 S | | 10/2002 | Thixton et al. |

OTHER PUBLICATIONS

Berther–Bonder (1995).

U.S. patent application Ser. No. 29/146,178, Yee et al., pending.

* cited by examiner



FIG. 1



FIG. 2



FIG. 3



FIG. 4



*FIG. 5*



*FIG. 6*



FIG. 7



FIG. 8



FIG. 9



FIG. 10



FIG. 11



FIG. 12

US00D462375S

(12) **United States Design Patent**
**Baden et al.**
(10) **Patent No.: US D462,375 S**
(45) **Date of Patent: ** Sep. 3, 2002**

(54) EYEGLASS AND EYEGLASS COMPONENTS

(75) Inventors: **Colin Baden**; **Peter Yee**, both of Irvine, CA (US)

(73) Assignee: **Oakley, Inc.**, Foothill Ranch, CA (US)

(**) Term: **14 Years**

(21) Appl. No.: **29/134,388**

(22) Filed: **Dec. 20, 2000**

(51) **LOC (7) Cl.** .................................................. **16-06**
(52) **U.S. Cl.** ..................................... **D16/326**; D16/327
(58) **Field of Search** ....................... D16/101, 300–330, D16/335, 338; D29/109, 110; 351/41, 44, 51, 52, 111, 119, 158; 2/447, 448

(56) **References Cited**

U.S. PATENT DOCUMENTS

836,796 A 11/1906 Anderson
1,338,880 A 2/1920 Stevens

(List continued on next page.)

OTHER PUBLICATIONS

Ray Ban Catalog, P18, Eyewear W2642, 1997.*
Asia Pacific Trading Company, Inc. "Asia Pacific 1999–2000", pp. 1 (models M0302SD/PM, M16SD, and M1685SD), 2 (models M1824LPM, M2066SD, M2128SD), 3 (model M3391SD), 5 (model M4771SD), 6 (models M663-1PM, M7107SD), 8 (model M8162SD/PM), 10 (models M942150SD/PM, M942240SD/PM, M94224SD/PM), 21 (models M942150CP, P4988SD), 24 (model M2282SD), 25 (models M5505PM, M60680SD), 35 (models M5409MSG, M7349MSG), and 42 (models M9820IR, M9821IR, M9822IR) unknown publisher and publishing date.

Asia Pacific Trading Company, Inc., "Asia Pacific 2000 Supplement", pp. 2 (models M5915SD, M5932SD, M5936SD, M5956SD), 3 (models M631SD, M6405SD/PM, M7920SD), 4 (models M88155SD/PM, M88205SD/PM, M95005PM, M95007SD/PM), 9 (models M98001MSG, M971MSG), unknown publisher and publishing date.

Sunglass Hut International, page stamped G00298, model B, unknown publisher and publishing date.

Alpina, "Serious, Perfect Eye Protection", Tatoo Model—top right corner of third page, unknown publisher and publishing date.

Frames, "Winter 1997", p. 1151, bottom right corner (Revolt model), unknown publisher and publishing date.

(List continued on next page.)

*Primary Examiner*—Raphael Barkai
(74) *Attorney, Agent, or Firm*—Gregory Nelson

(57) **CLAIM**

The ornamental design for an eyeglass and eyeglass component, as shown and described.

**DESCRIPTION**

FIG. **1** is a front perspective view of the eyeglass and the eyeglass components of the present invention:
FIG. **2** is a front elevation view thereof;
FIG. **3** is a rear elevation view thereof;
FIG. **4** is a left-side elevational view thereof, the right-side elevational view being a mirror image thereof;
FIG. **5** is a top view thereof; and,
FIG. **6** is a bottom plan view thereof.
Phantom lining, where utilized, is for illustrative purposes only and is not intended to limit the claimed design to the features shown in phantom.

**1 Claim, 4 Drawing Sheets**



## U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 2,031,771 | A | 2/1936 | Grier |
| D116,259 | S | 8/1939 | Cook |
| D145,288 | S | 7/1946 | Di Cicco |
| 2,482,664 | A | 9/1949 | Gagnon |
| D168,903 | S | 2/1953 | Neary |
| D169,724 | S | 6/1953 | Bauer et al. |
| D193,028 | S | 6/1962 | Petitto |
| D199,150 | S | 9/1964 | Carmichael |
| D204,496 | S | 4/1966 | McCulloch |
| D204,812 | S | 5/1966 | Shindler |
| D209,862 | S | 1/1968 | McCracken |
| D214,292 | S | 5/1969 | Mitchell |
| D228,026 | S | 7/1973 | Schindler |
| 5,054,903 | A | 10/1991 | Jannard et al. |
| D324,394 | S | 3/1992 | Jannard |
| 5,137,342 | A | 8/1992 | Jannard et al. |
| D342,534 | S | 12/1993 | Jannard et al. |
| D354,501 | S | 1/1995 | Jannard |
| D365,591 | S | 12/1995 | Jannard et al. |
| D366,890 | S | 2/1996 | Arnette |
| D366,891 | S | 2/1996 | Arnette |
| D369,614 | S | 5/1996 | Fukuchi |
| D371,152 | S | 6/1996 | Simioni et al. |
| D372,726 | S | 8/1996 | Simioni |
| D373,781 | S | 9/1996 | Simioni et al. |
| D376,381 | S | 12/1996 | Jannard et al. |
| D378,375 | S | 3/1997 | Tsai |
| D383,149 | S | 9/1997 | Simioni |
| D388,816 | S | 1/1998 | Jannard et al. |
| D391,596 | S | 3/1998 | Simioni |
| D392,662 | S | 3/1998 | Jannard et al. |
| D399,240 | S | 10/1998 | Jannard et al. |
| D399,865 | S | 10/1998 | Jannard et al. |
| D406,858 | S | 3/1999 | Arnette |
| D410,667 | S | 6/1999 | Arnette |
| D414,796 | S | 10/1999 | Arnette |
| D436,982 | S | 1/2000 | Jannard et al. |
| D420,036 | S | 2/2000 | Yee et al. |
| D423,035 | S | 4/2000 | Yee et al. |

## OTHER PUBLICATIONS

Frames "Summer 1996", p. 1225, second to bottom in right column ( model GU 5003 Sun), unknown publisher and publishing date.

Unknown source, pp. 90 (model Z5469), 93 (model Z554), 97 (models Z586, Z590, Z585, Z591), 100 (model Z604, Z605, Z606, Z607, Z608) unnumbered page (models B632, B630), 133 (models Z847, Z848), 136 (model Z873), and 328 (both models).

* cited by examiner



FIG. 1



FIG. 2



FIG. 3



FIG. 4



FIG. 5



FIG. 6

US00D479553S

(12) **United States Design Patent** (10) **Patent No.: US D479,553 S**

**Jannard et al.** (45) **Date of Patent: ** Sep. 9, 2003**

(54) **EYEGLASS AND EYEGLASS COMPONENTS**

(75) Inventors: **James H. Jannard**, Spieden Island, WA (US); **Hans Karsten Moritz**, Foothill Ranch, CA (US)

(73) Assignee: **Oakley, Inc.**, Foothill Ranch, CA (US)

(**) Term: **14 Years**

(21) Appl. No.: **29/174,570**

(22) Filed: **Jan. 17, 2003**

(51) **LOC (7) Cl.** .................................................. **16-06**

(52) **U.S. Cl.** .................... **D16/326**; D16/335; D16/327

(58) **Field of Search** ....................... D16/101, 300–330, D16/335; D29/109, 110; 351/41, 44, 51, 52, 111, 158; 2/447, 448

(56) **References Cited**

U.S. PATENT DOCUMENTS


D146,538 S 4/1947 Gagnon
D167,704 S 9/1952 McCardell
D168,903 S 2/1953 Neary
D169,724 S 6/1953 Bauer et al.
D198,719 S 7/1964 McCulloch
D198,939 S 8/1964 Huggins
D200,391 S 2/1965 Baratelli
D201,919 S 8/1965 Simpson
D202,130 S 8/1965 Mitchell
D204,417 S 4/1966 Shindler
D204,418 S 4/1966 Ramp
D204,496 S 4/1966 McCulloch
D205,419 S 8/1966 Griss
D209,095 S 10/1967 Ramp
D300,226 S 3/1989 Ramp
D365,591 S 12/1995 Jannard et al.
D366,891 S 2/1996 Arnette
D371,152 S 6/1996 Simioni et al.
D371,383 S 7/1996 Goldman
D373,781 S 9/1996 Simioni et al.
D376,381 S 12/1996 Jannard et al.
D382,891 S * 8/1997 Flanagan .................. D16/326
D383,149 S 9/1997 Simioni
D388,816 S 1/1998 Jannard et al.
D392,662 S 3/1998 Jannard et al.
D398,624 S * 9/1998 Brune ...................... D16/335
D399,240 S 10/1998 Jannard et al.
D399,865 S 10/1998 Jannard et al.
D410,667 S 6/1999 Arnette
D413,916 S * 9/1999 Flanagan .................. D16/326
D420,036 S 2/2000 Yee et al.
D422,011 S 3/2000 Conway
D423,035 S 4/2000 Yee et al.
D433,437 S 11/2000 Yee et al.
D436,982 S 1/2001 Jannard et al.
D446,804 S 8/2001 Thixton et al.
D450,745 S 11/2001 Thixton et al.
D462,375 S 9/2002 Baden et al.

OTHER PUBLICATIONS

Frames, "winter 1997", vol. 115, pp. 1150–1151, 1165, 1211.
Sunglass Hut International, Killer Loop, p. 17, unknown date.
Eyetel Catalog, p. E2, Eyetel Optics, Inc., unknown date.
Macy's Catalog, Jul. 1997.
Sidestreet Mondo Metal, Ray Ban 1997.
Macy's Catalog, p. 26, Mar. 1997.

* cited by examiner


*Primary Examiner*—Raphael Barkai
(74) *Attorney, Agent, or Firm*—Gregory K. Nelson

(57) **CLAIM**

The ornamental design for an eyeglass and eyeglass components, as shown and described.

**DESCRIPTION**

FIG. 1 is a front perspective view of the eyeglass and the eyeglass component of the present invention;
FIG. 2 is a front elevational view thereof;
FIG. 3 is a rear elevational view thereof;
FIG. 4 is a right-side elevational view thereof, the left-side elevational view being a mirror-image thereof;
FIG. 5 is a top plan view thereof; and,
FIG. 6 is a bottom plan view thereof.
Phantom lining, where utilized, is for illustrative purposes only and is not intended to limit the claimed design to the features shown in phantom.

**1 Claim, 4 Drawing Sheets**



EXHIBIT 21, Page 1 of 5



FIG. 1

FIG. 2



FIG. 3



FIG. 4





*FIG. 5*



*FIG. 6*

GREGORY L. WEEKS,
Cal. State Bar No. 58584
JANET ROBERTSON KAUFMAN,
Cal. State Bar No. 116143
GREGORY K. NELSON,
Cal. State Bar No. 203029
**WEEKS, KAUFMAN & JOHNSON**
462 Stevens Avenue, Suite 310
Solana Beach, CA 92075
(858) 794-2140

Attorneys for Plaintiff

FILED
01 NOV 19 AM 11:22
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY: DEPUTY

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **OAKLEY, INC.**, a Washington corporation,<br><br>Plaintiff,<br><br>vs.<br><br>**REPLICAWAREHOUSE.COM**, an unknown entity, **UNITED RESEARCH**, a Utah corporation, **DANIEL WEILACHER**, an individual,<br><br>Defendants. | CIVIL ACTION NO. 01 CV 1486 K (JAH)<br><br>FINAL CONSENT JUDGMENT |

This case having come on before this Court upon the pleadings and it being represented to the Court that Plaintiff Oakley, Inc. (hereinafter referred to as "Oakley") and Defendant Daniel Weilacher, Replicawarehouse.com, and United Research, (hereinafter referred to collectively as "Defendants") have settled their differences with respect to the matters in dispute. On the consent of Oakley, and its attorneys, and Defendants, and good cause having been shown;

... ... ...

IT IS HEREBY ORDERED, ADJUDICATED, AND DECREED:

1. This Court has jurisdiction over these parties and the subject matter herein.

2. Venue is proper in this judicial district.

3. Oakley is a corporation duly organized and existing under the laws of the state of Washington and having its principal place of business located at One Icon, Foothill Ranch, California 92610.

4. Defendant Weilacher is an individual from Utah. Defendant Weilacher is the principal owner and operator of Replicawarehouse.com and United Research, the remaining named Defendants.

5. Defendants agree not to contest the validity and enforceability of Oakley's federally registered trademark numbers 1,980,039, 1,984,501, and 2,146,295.

6. Defendants further agree not to contest the validity and enforceability of Oakley's U.S. Patent Nos. 5,137,342, D369,375, and D408,048.

7. Defendants are hereby permanently enjoined and restrained as of the date of this order from making, importing, using, or selling any sunglass that infringes any one or more of Oakley's United States Registered Trademark Nos. 1,980,039, 1,984,501, and 2,146,295, during their terms, without license or other authority from Oakley and from offering or advertising to do so and from aiding or abetting in any way or inducing or contributing to the infringement of these trademarks.

8. Defendants are hereby permanently enjoined and restrained as of the date of this order from making, importing,

using, or selling any sunglass that infringes any one or more of the designs or claims of Oakley's U.S. Patent Nos. 5,137,342, D369,375, and D408,048 during their terms, without license or other authority from Oakley and from offering or advertising to do so and from aiding or abetting in any way or inducing or contributing to the infringement of these trademarks.

9. All claims and defenses of Oakley and Defendants are dismissed with prejudice, except the claim for an injunction set forth above. Jurisdiction is retained by this Court for the purpose of ensuring compliance with the terms hereof, and enabling the parties to apply to this Court for further orders.

IT IS HEREBY ORDERED.

DATE:

JUDGE, U.S. DISTRICT COURT

**APPROVED AS TO FORM AND CONTENT:**

WEEKS, KAUFMAN & JOHNSON

GREGORY K. NELSON
Attorney for Plaintiff, Oakley, Inc.

DANIEL WEILACHER
For Defendants

# SETTLEMENT AND GENERAL RELEASE AGREEMENT

This Settlement Agreement (hereinafter "Agreement") is entered into by and between Oakley, Inc., a Washington corporation with its principal place of business located at One Icon, Foothill Ranch, CA 92610 (hereinafter referred to as "Oakley") and Daniel Weilacher, a resident of Utah, residing at 11876 South 300 West, Draper, Utah 84020 (hereinafter referred to as "Weilacher"), ReplicaWarehouse.com, a business owned and operated by Weilacher, and United Research, another Utah business owned and operated by Weilacher, collectively referred to as "the Parties."

## PURPOSE

This Agreement is made for the purpose of finally and completely settling the existing dispute describe below between the Parties.

## RECITALS

WHEREAS, Oakley is the manufacturer and seller of high quality and high performance eyewear;

WHEREAS, Weilacher is the principal owner and operator of www.ReplicaWarehouse.com (hereinafter referred to as "ReplicaWarehouse.com"), an Internet retailer of Oakley copy sunglasses, and United Research, which conspired with ReplicaWarehouse.com to sell Oakley copy sunglasses;

WHEREAS, Oakley filed a lawsuit in the United States District Court for the Central District of California, entitled Oakley, Inc. v. ReplicaWarehouse.com, United Research, Daniel Weilacher, and Brice Williams, Case No. 01 CV 1486 K (JAH), on August 16, 2001 (hereinafter referred to as "the Lawsuit"), with Brice Williams having been dismissed from the Lawsuit;

WHEREAS, Oakley claims in the first amended complaint of the Lawsuit that Weilacher, as ReplicaWarehouse.com and United Research, sold sunglasses that: (1) infringe Oakley's federally registered trademarks nos. 1,980,039, 1,984,501, and 2,146,295; (2) infringe Oakley's U.S. Patent Nos. 5,137,342, D369,375, and D408,048; and (3) dilute the distinctive nature and inherent value of Oakley's trademarks;

WHEREAS, Oakley claims that it has suffered great and irreparable harm as a result of the acts alleged in the first amended complaint filed in this Lawsuit; and

WHEREAS, the Parties have determined that it is in their best interest to compromise their dispute and wish to resolve and settle their differences under the terms and conditions set forth herein.

## AGREEMENT

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth below, the Parties agree as follows:

1. Weilacher, ReplicaWarehouse.com, and United Research Permanently Enjoined

As of the date of this Agreement, Weilacher, ReplicaWarehouse.com, and United Research, and their respective members, managers, officers, directors, principals, agents, servants, employees, suppliers, successors, assigns and all those in active concert or participation with Weilacher, ReplicaWarehouse.com, and United Research, agree to be permanently enjoined and restrained from:

(a) importing, selling, offering for sale, or advertising the sale of any sunglasses that infringe Oakley's federally registered trademark numbers 1,980,039, 1,984,501, and 2,146,295, without a valid license from Oakley to do so;

(b) making, using, importing, or selling any sunglasses that infringe Oakley's U.S. Patent Nos. 5,137,342, D369,375, and D408,048, without a valid license from Oakley, and to further refrain from aiding and abetting in the facilitation of activities constituting further patent infringement; and

(c) diluting, diminishing, or tarnishing the distinctive nature and inherent value of any Oakley trademarks.

2. Delivery Of Remaining Inventory Of Infringing Product

Weilacher, ReplicaWarehouse.com, and United Research agree to transfer title of and deliver all remaining inventory of allegedly infringing Oakley copy sunglasses within its possession or control to Oakley within 15 days after the signing of this Agreement. The amount of inventory to be sent to Oakley is approximately 30-35 dozen units.

3. Disclosure Of Suppliers Of Oakley Products

At least within 15 days after the signing of this Agreement, Weilacher, ReplicaWarehouse.com, and United Research agree to disclose to Oakley the names of the suppliers of the infringing products complained of by Oakley. Weilacher, ReplicaWarehouse.com, and United Research also agree to provide Oakley with documentation establishing how many units of Oakley copy sunglasses they purchased from each supplier (both for resale and wholesale).

4. Weilacher To Prepare Affidavit

Within 15 days after signing this Agreement, Weilacher agrees to prepare and execute an affidavit, signed subject to the laws of perjury, which sets forth the following: (a) a detailed description of the formation and operation of ReplicaWarehouse.com and United Research,

including the names of all persons who were involved in the operation of either ReplicaWarehouse.com or United Research and the relationship between the two companies; (b) the name and address (or other contact information) of the supplier of counterfeit Oakley sunglasses to ReplicaWarehouse.com; (c) the total number of units of counterfeit Oakley products ordered by ReplicaWarehouse.com (both wholesale and retail); (d) the total number of units of counterfeit Oakley sunglasses sold by ReplicaWarehouse.com (both wholesale and retail sales); (e) the total number of units of counterfeit Oakley sunglasses remaining in your inventory or possession; (f) your profit associated with the sale of counterfeit Oakley sunglasses; and (g) any information regarding the registration or use of mailbox number 601 at Mailboxes etc. by Weilacher, ReplicaWarehouse.com, or United Research, as well as any involvement by Brice Williams in that matter.

5. Compensation To Be Paid To Oakley

Weilacher, ReplicaWarehouse.com, and United Research acknowledge that Oakley is entitled to damages equaling at least twenty-thousand dollars ($20,000) arising out of the unlawful sale of Oakley copy sunglasses at www.ReplicaWarehouse.com since April 2000 until the present. Nonetheless, in consideration of the mutual covenants contained in this Agreement and to resolve this dispute, Weilacher, ReplicaWarehouse.com, and United Research agree to jointly and severally pay Oakley the amount of fifteen thousand dollars ($15,000.00) as compensation for their infringing sales. Payments shall be made as monthly payments equal to one-thousand two-hundred fifty dollars ($1250) over a one (1) year period of time. Payments shall be made on or before the fifteenth (15th) of each month, beginning on November 15, 2001, and ending on October 15, 2002. All payments should be made payable to "Oakley, Inc." and delivered to the offices of Oakley's attorneys, Weeks, Kaufman & Johnson, 462 Stevens Ave., Suite 310, Solana Beach, California 92075.

5.1. Liquidated Damages

In the event that Weilacher, ReplicaWarehouse.com, and/or United Research fail to make any monthly payment set forth in the above section, the Parties agree that Oakley shall be entitled to collect the full damage amount of twenty-thousand dollars ($20,000) from either Weilacher, ReplicaWarehouse.com, and/or United Research, jointly and severally, as well as an additional five-thousand dollars ($5,000) as compensation for monies that could have been collected as punitive damages or attorneys fees if the Lawsuit had continued, but which have so far been foregone by Oakley agreeing to the terms of this Agreement.

5.2. Section 1542 Waived

The Parties understand and expressly agree that this Agreement extends to all claims of every nature and kind, known or unknown, arising from or attributable to this matter. Any and all rights granted to any of the Parties under California Civil Code § 1542 are hereby expressly WAIVED. California Civil Code § 1542 reads:

"A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

6. Dismissal Of Lawsuit

The Parties agree that upon fulfillment of all the other provisions of this Agreement by Weilacher, ReplicaWarehouse.com, and United Research, that Oakley and Weilacher will execute a Final Consent Judgement which dismisses the Lawsuit, with all claims, counterclaims, and defenses, with prejudice.

7. Attorneys' Fees And Litigation Costs

The Parties shall bear their own attorneys' fees in this matter.

8. Miscellaneous Provisions

8.1. Binding Effect

This Agreement shall be binding upon and inure to the benefit of the Parties and their respective officers, directors, principals, agents, servants, employees, suppliers, successors, assigns, and all those in active concert or participation with them.

8.2. Severance Of Provisions

Should any part or provision of this Agreement be held unenforceable or in conflict with any law or jurisdiction, the validity of the remaining parts or provisions shall not be effected by such holdings so long as the primary purposes and intentions of the parties can still be accomplished.

8.3. No Other Representations

Each of the Parties represents, warrants, and agrees that, in executing this Agreement, it has relied solely on the statements expressly set forth within this Agreement. Each of the Parties further represents, warrants, and agrees that, in executing this Agreement, it has placed no reliance whatsoever on any statement, representation, or promise of any other Party, or any other person or entity, that is not expressly set forth within this Agreement, or upon the failure of any other Party, or any other person or entity, to make any statement, representation, or disclosure.

8.4. Authority

The individuals executing this Agreement on behalf of any corporation or partnership hereby acknowledge and state that they have the authority and all necessary approvals to execute this Agreement and to bind the respective corporation or partnership to the terms and conditions hereto.

8.5. Full And Complete Integration

This Agreement is the final written expression and the complete and exclusive statement of all agreements, conditions, promises, representations, and covenants between the Parties with respect to the subject matter of this Agreement. This Agreement replaces and supersedes all prior, former, or contemporaneous agreements, negotiations, understandings, representations, discussions, or warranties between and among the Parties.

8.6. Modification Or Amendment

Any modification, alteration, or amendment of this Agreement shall be non-binding, ineffective, and invalid, unless it in writing specifically refers to this Agreement and is signed by the Party, or a duly authorized representative of that Party, to be charged with the modification, alteration, or amendment.

8.7. Disputes Regarding This Agreement

In the event of any dispute between or among the Parties regarding this Agreement, the following provisions shall apply. This Agreement shall be construed and controlled in accordance with the laws of the State of California. The Parties agree that any dispute hereunder shall be subject to the exclusive jurisdiction of a court of competent jurisdiction in San Diego County, California, and the Parties hereby waive the right to have any dispute or claim arising hereunder tried or brought elsewhere. The Parties agree that in any litigation to enforce the provisions of this Settlement Agreement, the prevailing party shall be entitled to, in addition to costs and other relief of the court, reasonable attorney's fees.

IN WITNESS THEREOF, the Parties have caused their names to be subscribed and this agreement was executed and shall be effective as of the date set forth below.

**DATED:** 11-20-01

| | |
|---|---|
| **OAKLEY, INC.** | **DANIEL WEILACHER** |
| BY: Donna Gordon | |
| **REPLICAWAREHOUSE.COM** | **UNITED RESEARCH** |
| BY: Daniel Weilacher | BY: Daniel Weilacher |

C:\OAKLEY\settleagr 2001\replicawarehouse.com.wp5

8.5. Full And Complete Integration

This Agreement is the final written expression and the complete and exclusive statement of all agreements, conditions, promises, representations, and covenants between the Parties with respect to the subject matter of this Agreement. This Agreement replaces and supersedes all prior, former, or contemporaneous agreements, negotiations, understandings, representations, discussions, or warranties between and among the Parties.

8.6. Modification Or Amendment

Any modification, alteration, or amendment of this Agreement shall be non-binding, ineffective, and invalid, unless it in writing specifically refers to this Agreement and is signed by the Party, or a duly authorized representative of that Party, to be charged with the modification, alteration, or amendment.

8.7. Disputes Regarding This Agreement

In the event of any dispute between or among the Parties regarding this Agreement, the following provisions shall apply. This Agreement shall be construed and controlled in accordance with the laws of the State of California. The Parties agree that any dispute hereunder shall be subject to the exclusive jurisdiction of a court of competent jurisdiction in San Diego County, California, and the Parties hereby waive the right to have any dispute or claim arising hereunder tried or brought elsewhere. The Parties agree that in any litigation to enforce the provisions of this Settlement Agreement, the prevailing party shall be entitled to, in addition to costs and other relief of the court, reasonable attorney's fees.

IN WITNESS THEREOF, the Parties have caused their names to be subscribed and this agreement was executed and shall be effective as of the date set forth below.

**DATED:** ____________________

**OAKLEY, INC.**

____________________

BY:

**DANIEL WEILACHER**

[signature]

____________________

**REPLICAWAREHOUSE.COM**

[signature]

____________________

BY: Daniel Weilacher

**UNITED RESEARCH**

[signature]

____________________

BY: Daniel Weilacher

C:\OAKLEY\settleagr 2001\replicawarehouse.com.wp5

AO 120 (3/85)

| | |
|---|---|
| TO:<br>**Commissioner of Patents and Trademarks**<br>**Washington, D.C. 20231** | **REPORT ON THE**<br>**FILING OR DETERMINATION OF AN**<br>**ACTION REGARDING A PATENT** |

In compliance with the Act of July 19, 1952 (66 Stat. 814; 35 U.S.C. 290) you are hereby advised that a court action has been filed on the following patent(s) in the U.S. District Court:

| DOCKET NO. | DATE FILED | U.S. DISTRICT COURT |
|---|---|---|
| 03CV2486 B(AJB) | 12-11-03 | United States District Court, Southern District of California |
| PLAINTIFF<br>Oakley, Inc. | | DEFENDANT<br>Daniel Weilacher; Thebestreplicas.com; United Research |
| **PATENT NO.** | **DATE OF PATENT** | **PATENTEE** |
| 1 1,984,501 | 07-02-96 | Oakley, Inc. |
| 2 2,146,295 | 03-24-98 | Oakley, Inc. |
| 3 5,137,342 | 08-11-92 | Oakley, Inc. |
| 4 420,036 | 02-01-00 | Oakley, Inc. |
| 5 369,375 | `04-30-96 | Oakley, Inc. |

In the above-entitled case, the following patent(s) have been included:

| DATE INCLUDED | INCLUDED BY<br>☐ Amendment ☐ Answer ☐ Cross Bill ☐ Other Pleading | |
|---|---|---|
| **PATENT NO.** | **DATE OF PATENT** | **PATENTEE** |
| 1 | | |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | |

In the above-entitled case, the following decision has been rendered or judgment issued:

| DECISION/JUDGMENT | | |
|---|---|---|
| | | |
| CLERK | (BY) DEPUTY CLERK | DATE |

Copy 1 - Upon initiation of action, mail this copy to Commissioner Copy 3 - Upon termination of action, mail this copy to Commissioner

Copy 2 - Upon filing document adding patent(s), mail this copy to Commissioner Copy 4 - Case file copy

| PATENT NO. | DATE OF PATENT | PATENTEE |
|---|---|---|
| 1 408,048 | 04-13-99 | Oakley, Inc. |
| 2 D445,443 S | 07-24-01 | Oakley, Inc. |
| 3 376,381 | 12-10-96 | Oakley, Inc. |
| 4 423,548 | 04-25-00 | Oakley, Inc. |
| 5 D461,834 S | 08-20-02 | Oakley, Inc. |
| 6 399,866 | 10-20-98 | Oakley, Inc. |
| 7 422,298 | 04-04-00 | Oakley, Inc. |
| 8 415,188 | 10-12-99 | Oakley, Inc. |
| 9 D470,166 S | 02-11-03 | Oakley, Inc. |
| 10 398,326 | 09-15-98 | Oakley, Inc. |
| 11 D463,478 S | 09-24-02 | Oakley, Inc. |
| 12 384,686 | 10-07-97 | Oakley, Inc. |
| 13 D477,623 S | 07-22-03 | Oakley, Inc. |
| 14 D462,375 S | 09-03-02 | Oakley, Inc. |
| 15 D479,553 S | 09-09-03 | Oakley, Inc. |

# CIVIL COVER SHEET

**I(a) PLAINTIFFS**
OAKLEY, INC., a Washington corporation

**DEFENDANTS**
DANIEL WEILACHER, an individual, et al.

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF Orange, CA
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT Salt Lake, UT
(IN U.S. PLAINTIFF CASES ONLY)

FILED
DEC 11 2003
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY DEPUTY

(c) ATTORNEYS (FIRM NAME, ADDRESS AND TELEPHONE NUMBER)
WEEKS, KAUFMAN & JOHNSON
462 Stevens Ave., Suite 310
Solana Beach, CA 92075
(858) 794-2140

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)

- 1 U.S. Government Plaintiff
- X 3 Federal Question (U.S. Government Not a Party)
- 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE FOR DEFENDANT) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## V. ORIGIN (PLACE AN x IN ONE BOX ONLY)

X 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify) ☐ 6 Multidistrict Litigation ☐ 7 Appeal to District Judge from Magistrate Judgment

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
**DEMAND $**
Check YES only if demanded in complaint:
**JURY DEMAND:** X YES ☐ NO

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

This is a case for patent infringement under 35 U.S.C. §271 and §281

'03 CV 2486 B (AJB)

## IV. NATURE OF SUIT (PLACE AN x IN ONE BOX ONLY)

| OTHER STATUTES | CONTRACT | TORTS | | FORFEITURE / PENALTY | BANKRUPTCY |
|---|---|---|---|---|---|
| 400 State Reapportionment | ☐ 110 Insurance | PERSONAL INJURY | PERSONAL INJURY | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 |
| 410 Antitrust | ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury- Med Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 |
| 430 Banks and Banking | ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury- Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | PROPERTY RIGHTS |
| 450 Commerce/ICC Rates/etc | ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | ☐ 820 Copyrights |
| 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | PERSONAL PROPERTY | ☐ 640 R.R. & Truck | X 830 Patent |
| 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 370 Other Fraud | ☐ 650 Airline Regs | ☐ 840 Trademark |
| 810 Selective Service | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 371 Truth in Lending | ☐ 660 Occupational Safety/Health | SOCIAL SECURITY |
| 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment Of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | ☐ 690 Other | ☐ 861 HIA (1395ff) |
| 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | LABOR | ☐ 862 Black Lung (923) |
| 891 Agricultural Act | ☐ 190 Other Contract | ☐ 360 Other Personal Injury | | ☐ 710 Fair Labor Standards Act | ☐ 863 DIWC/DIWW (405(g)) |
| 892 Economic Stabilization Act | ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI |
| 893 Environmental Matters | REAL PROPERTY | CIVIL RIGHTS | PRISONER PETITIONS | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 865 RSI (405(g)) |
| 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 740 Railway Labor Act | FEDERAL TAX SUITS |
| 895 Freedom of Information Act | ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 530 General | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS-Third Party 26 USC 7609 |
| 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 540 Mandamus & Other | | |
| 890 Other Statutory Actions | ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 550 Civil Rights | | |
| | ☐ 290 All Other Real Property | | ☐ 555 Prison Condition | | |

**VIII(a). IDENTICAL CASES:** Has this action been previously filed and dismissed, remanded or closed? XX No ____ Yes

If yes, list case number(s): ______



*FOR OFFICE USE ONLY:* ☐ Pro Hac Vice fee: ☐ paid ☐ not paid
Applying IFP ______ Judge ______ Mag. Judge ______

PD $150.00 12/12/03 #99454VD